FITZ v. LEADAM.

(Circuit Court, E. D. New York.   July 27, 1904.)

1. PATENTS—INFRINGEMENT—BOOTTREES.
    The Stephens patent, No. 468,006, for a boottree, claims 1 and 3, construed, and *held* valid, but not infringed.

In Equity.   Suit for infringement of letters patent No. 468,006, for a boottree, granted to George Henry Stephens February 2, 1892.   On final hearing.

Clifford, Verrill & Clifford, for complainant.
Henry D. Williams, for defendant.

THOMAS, District Judge.   The bill was filed to restrain the infringement of letters patent No. 468,006, issued to George Henry Stephens, of London, England, on February 2, 1892, upon an application filed May 1, 1891, and assigned to the complainant on October 8, 1898, in consideration of $100.   Thereupon complainant's firm began the manufacture of boottrees under the patent, and has made, or caused to be made, an average of 5,000 pairs annually, of which about 75 per cent. were what are called in the record "hollow trees."   The defendant is a manufacturer of boottrees.   He began making and selling some of the alleged infringing trees in February, 1897, and his business increased until during 1902, the year immediately preceding the filing of the bill, he sold about 58,000 pairs.   The largely greater sales by defendant is in part, at least, accounted for by the fact that the "principle on which the tree [defendant's tree] works  *  *  *  is superior," as stated by the complainant.

Does defendant's tree infringe?   The defendant points out several alleged differences.   Among these are three that merit immediate discussion:   (1) Defendant's tree has no shank;   (2) it has no heelpiece at all like the heelpiece shown by the patent;   (3) the parts do not lie normally in a substantially horizontal plane.   Literally, these three statements are correct.   Claims 1 and 3 of the patent are involved.   These are:

   Claim 1:  "A last composed of two parts, one comprising the shank and toepiece, and the other the heelpiece, and a toggle link, the shank and toepiece being pivoted to one end of the link, and the heelpiece to the other end of said link, and both parts lying normally in a substantially horizontal plane, as set forth."
   Claim 3:  "A last composed of the parts a and b, each pivotally connected to the link, c, as shown and described, the parts a and b having each a recess in which the link normally lies in substantially the same horizontal plane with such parts when closed together."

The figures show that "a" is the forward portion of the tree, and "b" the heel portion, while the connecting link lies wholly in recesses, one in each part, to which it is pivoted, and, when the parts are brought into position, the link disappears from lateral view;   the parts then being "in substantially the same horizontal place."

The applicant, upon filing his application, made a single claim in his specification, to wit:

"A boottree, the toe and heel portions of which are connected by a link in such a manner that the parts cannot become detached, and that the said link, with the heel portion, forms a kind of toggle, by means of which the toe portion can be pushed into the boot, substantially as described."

The file wrapper shows that the claim was rejected as "vague and indefinite," because "the structure, per se, and not its function, should be claimed," and also upon references to three prior patents (McKay, Leighton, Bailey, Keats and Neil). Thereupon the applicant substituted the following claim:

"A boottree having separate heel and toe parts, combined with, and permanently connected to, a single connecting link, pivoted at one end to the heel and at its other end to the toe part, the combination permitting the heel part and the link to be lifted out of line with the toe part, and the toe part to be pushed into the boot by means of such heel part and link."

Thereupon this claim was rejected upon two references (Bailey, Keats and Neil, and Hodges), and the applicant substituted three claims, as follows:

"(1) A last composed of two parts, one comprising the shank and toepiece, and the other the heelpiece, and a toggle link; the shank and toepiece being pivoted to one end of the link, and the heelpiece to the other end of said link, and both parts lying normally in a substantially horizontal plane, as set forth.

"(2) A last composed of the parts a and b, connected by a toggle link, and operating as described, the heelpiece, a, having notches, e, e, for the purpose set forth.

"(3) A last composed of the parts a and b, pivotally connected by the link, c, as described, the parts a and b having each a recess in which the link lies when the parts a and b are closed together."

The claims 2 and 3 were deemed answered in terms by English patent 9,362 (Hodges, English), and for them were substituted the following:

"(2) A last composed of the parts a and b, connected by a link normally lying in a horizontal plane, as shown and described, the toepiece, b, having notches, e, e, for the purpose set forth.

"(3) A last composed of the parts a and b, pivotally connected by the link, c, as shown and described, the parts a and b having each a recess in which the link normally lies in the same horizontal plane with such parts when closed together, and the toepiece having notches, e, e, therein as set forth."

These claims 2 and 3 were rejected as within English patent 15,701 (Mobbs), and claims 2 and 3, as shown in the patent, substituted and allowed.

The specification and claims, as originally filed, described these parts in the tree—a toe portion, a heel portion, and a connecting link; the link and heel portion forming a kind of toggle. There was no reference to a shank, nor to the parts lying in substantially the same horizontal plane. The first substituted claim omitted mention of a shank or reference to the horizontal plane; but, when the three claims were substituted for one, it was claimed that the last "was composed of two parts, one comprising the shank and toepiece, and the other the heelpiece and a toggle link" (claim 1, not thereafter disturbed). There was further claimed "a last composed of the parts a and b, connected by a toggle link" (claim 2, afterward rejected); and "a last composed of the parts a and b, pivotally connected by the link, c, as described" (claim 3, afterward rejected). There was still no reference to a horizontal plane

in claims 2 and 3, but claim 1 read, "and both parts lying normally in a substantially horizontal plane, as set forth."

The next proffered amendments to claims 2 and 3 differed from those rejected, by providing in claim 2 for "parts a and b, connected by a link normally lying in a horizontal plane"—the last six words being new—and similar words were inserted in claim 3. Claims 2 and 3 were then amended and allowed, the principal amendment consisting of the interpolation of the word "substantially," so as to read, "in substantially a horizontal plane" (claim 2); "in substantially the same horizontal plane" (claim 3).

It will be observed that, in the progress of the application through the Patent Office, the words "toe and heel portions" had disappeared; that the description was made to conform to the diagram; that the tree contained two parts, one being "the shank and toepiece, and the other the heelpiece and toggle link," as described in claim 1, and by reference to the diagram in claims 2 and 3, although in every instance the notches, as described in claim 2, are located in "the toepiece." It will be further observed that, from no mention of a "horizontal plane," the claims were finally amended so as to provide for "both parts lying normally in a substantially horizontal plane" (claim 1), with similar language in claims 2 and 3. Now, the defendant's tree shows no shank. It shows a toepiece including a part corresponding somewhat to the ball of the foot. It has an egg-shaped form at the heel, and an arm projecting forward therefrom, and an adjustable link is pivoted to the toepiece and adjustably inserted in a recess in the arm. The link does not wholly lie within the recesses in the two parts.

The complainant's device seems designed to fit and fill out a shoe in all its parts—toe, ball, shank, and heel—with no interval between the parts; thereby restoring and preserving the desired shape of the shoe. The defendant's structure provides for driving in a wooden form to press forward into the toe and ball of the shoe, the heel part acting as a thrust against the heel end of the shoe. The link, in connection with the arm from the heel, in the first instance, acts as a toggle for driving the toe part home, in very much the same way as does the complainant's toggle. The link, as it is pressed down, performs practically the same initial function in both trees. But there is another function of the defendant's link in connection with the other parts that does not seem to exist in the complainant's tree. When the complainant's tree is in place in the shoe, the link has only a longitudinal thrust. The tree is then expected to conform to itself all parts of the shoe, but the link has only a longitudinal thrust. The tree, under the influence of this thrust, is expected to fill out the shoe. This is because the link is merely a connection between parts lying substantially in the same horizontal plane. But the defendant's tree is not expected to fill all parts of the shoe, nor is the sole reliance upon a longitudinal thrust. The effort is to drive into the toe of the shoe a form, and the toggle, when pressed down, not only drives the toe part forward, but also upward. The complainant's tree drives forward, but does not push upward. The complainant gets its upward and outward pressure on the shoe wholly from the shape of the last driven forward in the shoe. The defendant obtains upward pressure not only from a form

not necessarily nicely conformed to the fore part of the shoe, but also from the toggle constantly crowding upward on such form. This difference arises from the fact that complainant's parts are substantially in a horizontal plane, while defendant's parts are distinctly not in a horizontal plane. As the parts approximate the horizontal plane, the defendant's advantage decreases. The defendant's tree is designed to press the toe and ball of the shoe into shape, and not only retain the forward pressure, but also to provide an upward pressure. The complainant's design was to fill his shoe with a form that should press out every part of the shoe to its normal shape; using a toggle to force the parts home, and to hold them there. Hence appears the reason for the complainant providing for all parts of the shoe a form having a shank and a heel; such parts encompassing the link, and lying "substantially in the same horizontal plane." Claim 3 reads: "The parts a and b having each a recess in which the link normally lies in substantially the same horizontal plane with such parts when closed together." Indeed, the specification states that the link "is adapted to lie in a recess formed partly in the part a and partly in the part b." The shank was with manifest intention made a portion of claim 1 after the application was filed. It is, by reference to the diagrams, made a part of the other claims. It seems to be a part of the inventor's plan to make a last corresponding to a whole shoe. The specification shows that the link is to be inclosed in the parts, thereby necessitating a shank; otherwise some part of the link would be exposed. With considerable hesitation, it is concluded that these considerations demand a holding that a tree not showing a shank is not within the claim. But even if such a tree were within claim 3 in that regard, yet it would be excluded from that claim if the parts were distinctly not in the same horizontal plane, as the link then has an additional function, and produces another and useful result.

The complainant's invention is meritorious, and it is considered that, properly construed, it is not anticipated. The defendant will have a decree.