### LEADAM et al. v. RINGGOLD & CO. et al.

#### (Circuit Court, S. D. New York. November 7, 1905.)

1. PATENTS—SUIT FOR INFRINGEMENT—EFFECT OF CHANGE OF OWNERSHIP.
   A court of equity, which has acquired jurisdiction of a suit by the owner of a patent to enjoin its infringement and to recover damages for past infringement, does not lose such jurisdiction because, pending the suit, the patent is assigned to another, who is brought in by a supplemental bill under equity rule 57, and may proceed, not only to grant an injunction, but to award damages to both the original complainant and his assignee for infringement proved during the time of their respective ownership.

2. SAME—INFRINGEMENT—BOOTTREE.
   The Leadam patent, No. 621,423, for a boottree, was not anticipated, discloses invention, and is entitled to a fairly liberal construction; also held infringed.

In Equity. On final hearing.

Henry D. Williams, for complainants.

William Quinby and Seymour, Seymour & Harmon, for defendants.

HAZEL, District Judge. This is a bill in equity to enjoin the infringement by defendants of patent No. 621,423, issued on March 21, 1899, to Lionel H. Leadam, and for an account of the profits and damages. The patent relates to improvements in a boottree, and consists of a wooden device which snugly fits the interior of a boot or shoe, keeping the same stretched or distended and imparting to it a shapely appearance. The suit was originally instituted by the complainants, Lionel H. Leadam, inventor, and Agnes Leadam, his wife, to whom the patent had been assigned by the former, and who on the same day orally granted an exclusive license back to her husband, the assignor. After issue herein was joined, Mrs. Leadam in terms reassigned the patent to her husband, and he subsequently, on August 20, 1903, transferred the same to the Lionel H. Leadam

Company, a corporation. On August 31, 1903, the latter mortgaged and assigned the patent to one Dammann as trustee, and on September 9, 1903, it executed and delivered a quitclaim assignment to the New Jersey Shoe-Tree & Last Company, the present owner, subject, however, to the interest of the said trustee. Each complainant claims a right of recovery from the defendant or an interest in the profits and damages accruing on account of the alleged infringement during their separate ownership. The later acquirements of title were not alleged in the original bill, but, after taking testimony herein, the additional parties in interest were brought in under equity rule 57 by a supplemental bill, which correctly averred the several assignments and ownerships of the patent in suit. The defendants Ringgold & Co. are dealers in the infringing article, and the defendant Oliver A. Miller is the manufacturer thereof.

The point is urged by the defendant that the supplemental bill in its present form cannot be maintained, on the ground that, as the original complainants have parted with their title to the patent, recourse must be had by them to an action at law, and not in equity, to recover the profits and damages for the time that they were owners, respectively. This proposition is thought unsound. The various changes of title in evidence do not convey the choses in action which had accrued at the time of the several assignments of the patent. It is well settled that claims for profits and damages arising from past infringements do not follow the title derived by a naked assignment of the patent. New York Grape Sugar Co. v. Buffalo Grape Sugar Co. (C. C.) 18 Fed. 638; Curtis Davis & Co. v. Smith (C. C.) 105 Fed. 949. The different owners of the patent in suit did not transfer their claims for damages and profits for infringement during the period of their several ownerships. In New York Grape Sugar Co. v. Buffalo Grape Sugar Co., supra, which was a suit in equity for infringement of patents, the court said:

"The claim for profits or damages arising from infringements prior to the plaintiff's purchase are choses in action, and the assignee takes the title subject to all the equities existing against the assignors. Such claims do not pass by a mere assignment of the patent. In these bills there are no averments that the plaintiff is the owner of such claims. The title to the patents only, through the various assignments, is alleged, but the allegation of an assignment of the patent is not an allegation of an assignment of claims for past infringement."

In Curtis Davis & Co. v. Smith, supra, the complainants, during the pendency of an action for infringement of a trade-mark, transferred their business, including trade-mark rights, to another, but did not sell their right to recovery for past infringement. The court said:

"It appears from the allegations of the petition and proposed supplemental bill that Curtis Davis & Co. have not transferred all their interest in the subject-matter of the suit, and that they are still entitled to recover profits prior to the assignment. In these circumstances, a court of equity, having once acquired jurisdiction, will retain it until the questions involved in the suit have been determined. The assignee of an interest in such a suit is entitled to the benefits of the prior proceedings therein."

Therefore the question is whether this court, having concededly acquired jurisdiction, is deprived of its equity power by the various

changes of title during the pendency of the action. Inasmuch as the supplemental bill alleges that an injunction is sought to restrain further infringement of the patent in suit and a recovery of profits and damages by the different complainants for the period only of their interest as owners, the principle of the cases from which I have quoted is undoubtedly applicable; and, as the additional facts are well pleaded, the objection that the court is without jurisdiction is unavailing. The court had jurisdiction of the original bill brought by Leadam and wife, who, as already stated, were respectively licensee and owner of the patent, and therefore the supplemental bill alleging the later transfers is a practical continuance of the original litigation. 1 Beach, Mod. Eq. Pr. § 506, p. 519; 1 Foster's Fed. Pr. § 188, p. 411.

The patent in suit, which has three claims, will now be considered. The first claim only is involved, and reads as follows:

"(1) The herein-described tree for boots and shoes, comprising the toe or forward member, a heel or rear member bifurcated at its forward end and having a pin extending across the bifurcation, and a bar pivotally connected with the toe member and adapted to rest in the bifurcation of the heel member and having a longitudinal slot receiving the pin of the heel member and also having a device adjustable in the direction of its length for engaging the pin of the heel member, substantially as specified."

The elements of the claim are the forward member and rear member, which is bifurcated at its forward end and has a pin extending across such bifurcation, and a slotted bar pivotally connected with the forward member so adjusted as to form a toggle joint leverage. The specification declares that the object and purpose of the arrangement intermediate of the toe and heel member is—

"To thrust the same in opposite directions, so as to properly stretch, flatten, and straighten the sole and shape the upper of a shoe and fix the tree in the same. The said bar, C, has its rear end arranged in the bifurcation of the heel member and its forward end arranged in the curve, a, of the toe member, A, as best shown in figure 2."

Apparently the functional object of the patent was secured by a simple though novel arrangement of the toggle, which enables a simultaneous forward and upward pressure of the rear portion of the toe member against the vamp of the shoe, and a forward and downward pressure of the toe member against the sole, resulting in the straightening or flattening thereof, and in effacing the wrinkles from the shoe upper. This is accomplished by swinging the member, B, down in the position indicated in figure 1, and then using the connecting bar, C, as a lever to depress the heel end. Defendants challenge the validity of the patent and claim that no invention is disclosed by it; that the patent is anticipated; and that no new or improved mode of operation is shown. Numerous prior patents were brought into the record to anticipate the novelty of the involved claim. Upon the argument, however, it was conceded that the important references were the patents to Stephens, No. 468,006, dated February 2, 1892; to Yapp (American), No. 525,934, dated September 11, 1894, and No. 3,042 (English), dated February 12, 1894. In the Stephens patent is shown a device which fits the entire shoe like a last, with no intermediate portion or connecting bar. In Fitz v. Lead-

am (C. C.) 132 Fed. 659, an action wherein infringement of the Stephens patents by the patent in suit was asserted, Judge Thomas considered and clearly differentiated the Stephens and Leadam devices. The essential differences in the mode of operation are thus stated in his opinion:

"When the complainant's tree is in place in the shoe, the link has only a longitudinal thrust. The tree is then expected to conform to itself all parts of the shoe, but the link has only a longitudinal thrust. The tree, under the influence of this thrust, is expected to fill out the shoe. This is because the link is merely a connection between parts lying substantially in the same horizontal plane. But the defendant's tree is not expected to fill all parts of the shoe, nor is the sole reliance upon a longitudinal thrust. The effort is to drive into the toe of the shoe a form, and the toggle, when pressed down, not only drives the toe forward, but also upward. The complainant's tree drives forward but does not push upward."

From the record in this case, I have also reached the same conclusion, that the modes of operation of the said patents are distinctly different, and therefore the Stephens patent is not an anticipation. The Yapp patents above mentioned are undoubtedly defendants' best references, but they fail to anticipate the improvement in question. Although the method of operation of the Leadam boottree at first blush would seem precisely like that of Yapp, yet when closely examined in connection with the proofs essential differences are revealed, which undoubtedly insure the usefulness and value of the device in question. The functional differences in the patent in suit, by which the toggle joint acts simultaneously upon the forward and rear portion of the foot gear, and in such a way as to impart to the rear part of the toe member a forward and upward thrust, are thought in a limited degree to possess patentable merit. The principle of the Yapp structures, by which the functions of the different members are enabled to respond freely to pressure upon the toggle joint, is unlike that of the Leadam device. The bifurcation in the heel portion of the device in suit, together with the easy movement of the intermediate member, by which the connected parts produce the desired forward and upward thrust, is wholly absent in the Yapp device. In the latter, the pressure upon the toggle results in pushing the toe member forward, without imparting sufficient upward thrust to the rear portion of the toe member, so as to drive the point of the toe member downward. The efficiency of complainants' boottree is secured, as heretofore stated, by a mode of operation which causes the rear part of the toe member to slightly rise when pressed forward; the toe portion becoming depressed. This was a new and patentable result. Moreover, the impracticability of the Yapp boottrees is asserted. Upon this point, complainants' expert witness testifies:

"The Yapp toggle has the lock which prevents the free up and down movement of the central pivot, and limits its position to one nearly in line with the front pivot and the rear point of reaction. In this way the tendency to fly upward is much greater, as I have already explained, and, furthermore, the whole strain is directly backward upon the heel of the shoe and upon a very narrow portion of the heel."

The upward thrust of complainants' device is found in the Yapp structures, but the toggle arrangement, as stated, is unlike that of

the patent in suit. On account of the bifurcation in the rear portion of the toggle, both the front and rear elements which are of metal overlap each other, resulting in the restriction of the central pivot of the toggle in its locking or downward movement. In other words, the toggle operates to press the central member down in the shoe, but on account of the overlaping of the thrust rods the efficiency of the device is materially lessened. Furthermore, the upper thrust in the Yapp device is comparatively slight, and such device is not so capable, while in use, of keeping the toe portion of the shoe entirely free from wrinkles or the sole flattened. Additional evidence was given to show that the prior structures of Yapp are defective and impracticable. It is pointed out by the evidence that the central metal bar becomes bent by use; that, by ordinary use, the locking arrangement is rendered unable to perform its functions. This showing, which is not seriously controverted, is entitled to probative weight. It is not intended to hold that the Yapp devices are wholly incapable of successful operation, but the evidence warrants the conclusion that they are imperfect in the sense that they soon become useless from continued wear or use, and fail to produce the beneficial results of the improvement in suit. The resemblances already indicated between the Yapp and Leadam boottrees are quite close. Nevertheless, the former cannot constitute an anticipation in view of the advance in the art, as indicated by the patent in suit. The commercial advantage attained by the Leadam invention over the prior art, and especially over the Yapp device, is undoubtedly owing to its simplicity and stability, and to the toggle arrangement by which its successful adjustability and durableness is achieved. The fact that the boottree in question quickly replaced the Yapp boottrees and came into popular favor, as shown by the increased sales, cannot be ignored. The commercial success of a patented device is ordinarily considered by the court, upon the question of novelty, whenever patentability is doubtful. Although it cannot be claimed that the art has been prodigiously progressed, still, the field being narrow, and the method by which the new result is accomplished being essentially different, complainants' patent is entitled to protection.

The next question is that of infringement. Undoubtedly the various elements employed to carry out the conception of the patentee, considered separately, were familiar; but the combination was new. Foot forms, or boottrees having toe and heel members, adjusted to an intermediate member, and a toggle leverage connecting the toe and heel portion, were old. These elements of the claim, however, had not, prior to the Leadam device, been combined to functionally operate to thrust the toe part forward and upward, as herein described. Such being the conclusion reached by the court, the patent is entitled to a reasonable construction, so as not to deprive the patentee of the benefits of his invention. The defendants in their boottree, which closely resembles complainants', have slightly altered nonessential details. The bifurcation of the heel member is narrower, the connecting bar has a longitudinal slot, and is constructed of metal, and the parts are adjusted by a clamping arrangement which has a nut and sleeve. These changes, however, are immaterial. The

said device in fact distinctly conforms to the. description of the claim in controversy. The characteristic thrust feature, which is of the essence of the Leadam invention, is present, and the form as well as the substance of such invention has been taken. In Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586, the Supreme Court said:

"As the two machines are alike in their functions, combinations, and elements, it is unnecessary to go further and inquire whether they are alike or unlike in their details."

Claim 1, here involved, is broad, and would seem to embrace the combination without limiting the patentee to the precise form of boottree described in the specification.

It follows that complainants are entitled to a decree for an injunction and accounting, with costs.