NEW JERSEY SHOE TREE & LAST CO. v. BAKER SHOE TREE MFG. CO.

(Circuit Court, S. D. New York. September 15, 1908.)

PATENTS (§ 328*)—INFRINGEMENT—SHOE TREES.

The Leadam patents, Nos. 621,423 and 621,424, for improvements in shoe trees, are merely for improvements on a known device for producing an old result, and must be construed strictly, and limited to the specific improvements shown and described, leaving the field of improvement open to others. As so construed, *held* not infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

Henry D. Williams, for complainant.
Frederick H. Patterson, for defendant.

MARTIN, District Judge. The complainant alleges infringement of two letters patent of the United States, granted to Lionel H. Leadam on the same day, March 21, 1899, Nos. 621,423 and 621,424, for improvements in shoe trees, and that the complainant is a corporation of which the patentee is the president and the assignee of said patents. On hearing it is urged that the defendant infringed claim 1 of the first patent and claims 1 and 2 of the second patent. The

prayer is for an injunction and an accounting for profits to the defendant and damages to the complainant. The defendant admits the issuing of said letters patent, but denies in substance all the other allegations.

The questions presented are: First. Do the complainant's patents come up to the standard of patentable novelty and inventive genius, in view of the then state of the prior art? Second. Has the defendant infringed complainant's patents?

The complainant's shoe trees were before the court in the case of Fitz v. Leadam (C. C.) 132 Fed. 659, and in Leadam et al. v. Ringgold & Co. et al. (C. C.) 140 Fed. 611. While the doctrine of stare decisis does not apply, as those cases involved a different state of facts and were between different parties, yet in view of my conclusions upon the second question presented, that of infringement, I do not deem it necessary to pass upon the first question.

The complainant plants its case as to infringement upon the claim that "Mr. Leadam is, in fact, the pioneer and founder of the shoe tree business." This claim is not sustained by the evidence. At the time Mr. Leadam obtained these letters patent he only claimed them to be improvements of shoe trees. The use of shoe trees for the same results that are set forth in the Leadam patent is old. See the record as to Stephens, Yapp, Pabst, and Lee patents. It was the advanced status of the art in shoe trees that led Fitz to bring suit against Leadam for infringement, and so nearly did Leadam come in these very patents to an infringement that the learned Judge Thomas stated in his opinion that it was "with considerable hesitancy" that he came to the conclusion that the Leadam patent did not infringe the Stephens patent. He simply holds that the Leadam device is not an infringement of the Stephens patent, in that the Leadam patent is another way of getting the same results as the Stephens, and differentiates by saying that the Leadam patent is not expected to fill all parts of the shoe, nor is the sole reliance upon a longitudinal thrust, and that the toggle, when pressed down, drives the toe, not only forward, but upward. The Stephens patent drives forward. The Leadam patent not only drives forward, but, through the application of the toggle, crowds upward. Judge Thomas' holding is, in effect, that the Leadam shoe tree had applied to it the lever power of a toggle, and therefore did not infringe the longitudinal thrust of the Stephens patent.

The application of the lever power of a toggle to a shoe tree is also old. There is nothing new or inventive in securing an upward thrust or pressure by placing a toggle between two abutments and applying the lever power. Applying the toggle between the heel and toe of a shoe tree, if there is resistance at the heel and at the toe, and the lever power of the toggle is brought into use, there is no escape from an upward pressure. This principle, of itself, so far as I am able to discover, has never been held patentable by the Patent Office. The Yapp patent has the toggle and the upward pressure on the toe piece. It is set forth in this language:

"This front or toe portion, A, takes a downward bearing on the sole at or near its toe extremity, so as to form the abutment necessary to convert the forward into an upward pressure of the front or toe portion, A. * * * The

thrust of·said rod is exerted in an upwardly inclined direction from b to a, thereby tending to lift the rear end of the toe portion, A, and expand the instep portion of the shoe."

There is nothing new in Yapp's claim, as above quoted, and it was so held by the Patent Office. His patent was based upon the flexible toggle lever. The opinion of Judge Thomas, in the Fitz Case, is referred to as indicating that the special thing of the Leadam patent is the upward thrust. While that is true, he nowhere indicates that the upward thrust was patentable. He shows wherein the Leadam device differs from that of Stephens. He was not passing upon the patentability of the Leadam shoe tree at all. It is claimed under the Leadam patent that when the rear end of the lever is depressed until the pin, c, rests in a dead center with the pin, d, and the point at which the member, B, bears against the shoe, it will thrust the heel and toe members in opposite directions. This claim is correct. It surely will do that. The application of the lever power of the toggle cannot do otherwise. The same principle is used and applied in carpet and garment stretchers. The Hall patent, the Whitney patent, the Whitlock patent, and the Mahl patent have the bifurcated member, fulcrum pin, toggle lever adjustment, and some of them the bar, with a series of holes for the adjustment of the pin. Everything but the toe and the heel end of the heel member of the complainant's first patent is found in the garment and carpet stretcher devices, and surely the toe and heel end of the heel member are found in previous shoe tree patents, so the Leadam patent is, in fact, a combination of old ideas. Every principle of it is old; but they are brought together and applied to a shoe tree in such a manner that Judge Hazel has held it to be a patentable invention. While he was quite likely correct, such a patent should be construed strictly, thus leaving the field of improvement open to others.

To settle the question of infringement it is necessary to at least briefly compare the Leadam patents, which the complainant owns, with the Baker patent, which complainant claims infringes. The forward member of the three patents is the toe end of an ordinary last. It is not claimed that there is anything patentable about that. The rear of the first Leadam patent, No. 621,423, is the heel member bifurcated at its forward end. The defendant's device has no such bifurcated member. There is no infringement of that member. The Leadam patent has a pin extending across the bifurcated heel member at its forward end. The defendant's device has nothing of that sort. The Leadam patent has a bar pivotally connected in the bifurcated slot with the toe member, and so constructed as to rest in the bifurcated end of the heel member, and having a longitudinal slot which receives the pin of the heel member. Right here is the only similarity in the construction of the two devices, but these differ. The defendant or Baker patent has a steel bar connecting the heel and toe members, which bar contains a series of holes cut so near together that they run into each other in which slides a pin that is attached to the heel member and operates with a spring. When the pin is pressed out, the heel may be carried forward or backward, as may be desired

by the user, and when adjusted in one of these holes the toggle is held firmly, and cannot slip or slide, while in the use of the complainant's patent the toggle is not held firmly unless it be at its extreme length; neither can it be adjusted so handily or readily as the Baker patent. Besides, the toggle pin in the Leadam patent, in order to avoid its being lost or mislaid, is connected by a chain, which is somewhat unhandy and troublesome. In use the Leadam shoe tree cannot be reduced in length with the pressure on, while the defendant's patent can readily be reduced under pressure. This bar of the Baker patent is pivoted to the toe member, but rests in a saw kerf, instead of a bifurcation. According to my view of it, this connecting bar of the Baker patent contains an improvement upon the Leadam patent that comes up to the standard of invention and is not an infringement.

In the second Leadam patent, No. 621,424, there is attached to the heel member a rod bifurcated at its forward end, with a pin extending across this bifurcation. The bar connecting this member with the toe piece is made of steel, and has a plain groove, in which slides the pin that connects the bifurcated rod of the heel member, which groove has overhanging slanting teeth. In its operation the pin that connects the bifurcated end of the heel member is raised into the slots of these teeth adjusted to the length of the shoe; but there is no way by which this pin can be firmly fastened between any of the teeth. It can only be held there by the hand or by pressure. This is wholly unlike the Baker patent. In the Baker patent there is nothing like the bifurcated heel member of the Leadam patent, and the slot in the connecting bar works very differently, loosely in one, firmly fixed in the other.

It is apparent that the Patent Office did not regard the application of a toggle in a manner to produce the upward thrust as patentable. They first rejected claim 1 of the first Leadam patent, because the pin, G, was not specifically set forth. The upward thrust pressure is in the Yapp patent. If the heel member of the Yapp patent was bifurcated, so as to permit the steel rod to pass between the forks in the downward pressure of the toggle, it would have every essential appliance of the Leadam patent, except one is of wood and the other of metal.

Judge Hazel held the Ringgold shoe tree to be an infringement. There the heel and toe members are bifurcated, like the Leadam patent; substantially the same connecting bar, the only difference being that the Ringgold patent has a bolt with a nut pinching the bifurcated parts of the heel member to the connecting bar, instead of doing it with a toggle pin. The defendant's patent is very different. Neither the heel nor the toe member is bifurcated. Surely the saw kerf in the toe piece cannot be called a bifurcation. It has no bifurcated part about it. The similarity is that it has a toggle. So have the Yapp and the Stephens patents a toggle. The use of a toggle in a shoe tree was old when Leadam obtained his patent. The defendant's use of the toggle does not rest upon the application of bifurcated heel and toe, nor of the pin connecting the bifurcated points, nor the pin, G, passing through the connecting bar. It is an entirely different

way of putting the toggle into a position whereby the old art of the lever power of a toggle is applied. Indeed, I think there is quite as much difference between the defendant's device and the Leadam patents as there is between the latter and previous constructions; and the Baker shoe tree displays more mechanical skill and inventive genius. It is not "a mere colorable change in form and parts to work out the same result," as there is a material difference in both the adjustment and working of the tree. To hold that the Baker patent is an infringement upon either of the Leadam patents would be equivalent to holding that no one can devise any other toggle applied to a shoe tree without infringing one or the other of the Leadam patents. There is no novelty in the work accomplished by the Leadam patents. Prior inventors sought and obtained the same result. The difference is in the range of equivalents.

In Proctor v. Bennis, 36 Ch. Div. 740, Lord Justice Cotton said:

"Where there is no novelty in the result, and where the machine is not a new one, but the claim is only for improvements in a known machine for producing a known result, the patentee must be tied down strictly to the invention which he claims, and the mode which he points out of effecting the improvement."

This principle has always been applied, so far as I have been able to observe, by the Supreme Court of the United States:

"If the invention claimed be itself but an improvement on a known machine, by a mere change of form or combination of parts, the patentee cannot treat another as an infringer who has improved the original machine by use of a different form or combination performing the same function. The inventor of the first improvement cannot invoke the doctrine of equivalents to suppress all other improvements which are not mere colorable invasions of the first." McCormick v. Talcott, 20 How. 402, 15 L. Ed. 930.

Applying the law to the facts in this case, as I find them to be from the record and the exhibits before me, my conclusion is that the defendant has not infringed the complainant's patents. Therefore the defendant may have decree.