AUTO SPRING REPAIRER CO. v. GRINBERG et al.

(Circuit Court, S. D. New York. January 6, 1912.)

1. PATENTS (§ 129*)—SUIT FOR INFRINGEMENT—DEFENSES—ESTOPPEL.
    A license given by the owner of a patent to defendants, on a sale to them of a job lot of parts used in making the patented article, to finish up such parts into completed articles and market the same, does not estop defendants from contesting the validity of the patent, when sued for infringement by making the patented article as a whole after the parts sold had all been used.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 182½–186; Dec. Dig. § 129.*]

2. PATENTS (§ 328*)—INVENTION—AUTO SPRING REPAIRER.
    The Petze patent, No. 899,468, for an auto spring repairer for emergency use, in view of the prior art, is void for lack of invention.

3. PATENTS (§ 265*)—SUITS FOR INFRINGEMENT—RIGHT OF ASSIGNEE TO SUE FOR PRIOR INFRINGEMENTS.
    An assignment of a patent in the usual form does not convey to the assignee the right to recover damages for prior infringements.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 407–409; Dec. Dig. § 265.*]

In Equity. Suit by the Auto Spring Repairer Company against David Grinberg and Adolph Morris, sued as the Manhattan Storage Company, and Adolph Morris, doing business as the Manhattan Storage Company. On final hearing. Decree for defendants.

See, also, 175 Fed. 799.

Charles S. Champion, for complainant.

Sidney S. Meyers (Walter H. Pumphrey, of counsel), for defendants.

HAZEL, District Judge. This is an infringement suit relating to patent No. 899,468, granted September 22, 1908, to William R. Petze, for improvements in spring repairers, and by him assigned to complainant. The principal object of the patentee was to provide a device which could be readily applied to the springs of motor cars to reinforce them so as to permit the car to continue its journey after a spring had been fractured or broken. The device in suit specifically consists of a bow-shaped tie-piece which is shorter than the spring and which can be connected to a break, either at the end or in the center; together with the means for fastening the same to the spring adjacent to the break. The novel feature of the patent, as claimed by the complainant, consists in providing means at one or both ends of the spring repairer for attaching one end of the tie-piece to the motor car or vehicle as a substitute for the broken spring.

The defenses are: (1) That the assignment of the patent to the complainant by the patentee does not confer the right to sue and recover damages for infringements prior to its date; (2) that the patent is invalid; and (3) noninfringement.

[1] The complainant proceeds broadly upon the theory that a license was given by complainant's predecessor permitting the using up

of parts of incompleted structures that had previously been sold to the defendants; and that the defendants, who subsequently caused to be made a number of arches, were concluded to deny the invalidity of the patent. The license is in the nature of a memorandum of acknowledgment of the payment of the sum of $15 "for job lot of parts appertaining to what is known as the 'Auto Spring Repairer,'" and permission is therein granted the Manhattan Storage Company to finish up such parts into complete repairers with leave "to market same." The defendants contend that this was not a license or right to manufacture; that the transaction was simply one of sale of the job lot parts; that the doctrine of estoppel is inapplicable, and the defense of invalidity of the patent may properly be interposed.

On motion for preliminary injunction, and later, on motion to amend the answer and dismiss the injunction, it was held, on practically the same showing as here, that the memorandum of delivery constituted an implied license to make the tie-pieces and fastening means so as to use up the different parts that had been sold; and I am of a similar opinion, save that I think the license was without force after the job lot parts were used and sold by the defendants. The permissive right to make parts of an incompleted structure does not convey the right to make the article as a whole. Judge Hand enjoined the defendants from making and selling the devices excepting such as contained some part, or parts, which were sold and delivered by complainant's predecessor on February 13, 1909, and he held the intention of the parties to have been that the right to construct new arches—the main part of the device—as well as the minor parts, was given by the license. Auto Spring Repairer Company v. Grinberg (C. C.) 175 Fed. 799. Such, I think, was the intention of the parties as shown by the evidence. Viewing it in this light, the defendants were not estopped from contesting the validity of the patent as to any spring repairers that were made and sold by them after they disposed of the job lot. H. Tibbe & Son Mfg. Co. v. Heineken (C. C.) 37 Fed. 686; Dueber Watch-Case Mfg. Co. et al. v. Robbins et al., 75 Fed. 17, 21 C. C. A. 198; Rose v. Hirsh, 77 Fed. 469, 23 C. C. A. 246; Wooster v. Singer Mfg. Co., Fed. Cas. No. 18,039a.

[2] Concededly the prior patent to Power, No. 902,250, dated October 27, 1908, and of generic origin, was for an emergency repair device which was constructed of metal and could be applied to the broken spring of a motor car. It was incapable, however, of reinforcing a spring fractured at either end, since it possessed no means for fastening the tie-piece to the body of the car. The Petze patent in suit, as already mentioned, was designed to provide means for connecting the arch to a broken spring at either of its ends; such means simply consisting of putting an eye in the end of the arch so as to connect thereto the clips, bolts, nuts, and spring. Was this a patentable accomplishment? Was anything new and useful produced which had no prior existence or which an ordinarily skilled mechanic could not have produced? In view of what is shown in the Power patent and in the patents to Lavers and Fader, I do not think that it involves invention to provide specific means to enable fastening the device on any part of the broken spring. This was an improvement over the

Power structure which would naturally suggest itself to the skilled in the art. The tie-piece or arch was old, and the clamping means were such as were commonly used to fasten together pieces of metal in substantially the same way as that described in the specification.

As to infringement, the testimony is not entirely satisfactory, though it would seem to indicate that during the existence of the license a large number of additional arches was manufactured by the defendants —a larger number than was required to use up the plates and bolts. The witness Petze testified, and he was corroborated with apparent reluctance by complainant's witness Cluff, that approximately 100 completed sets of spring repairers were sold to the defendants by the partnership, and that each set comprised an arch, 4 plates, 4 bolts, 4 nuts, and 1 containing bag; while the witness Gomprecht, defendants' manager, swears that the incomplete sets far exceeded the completed sets.

[3] Irrespective, however, of whether the complainant has maintained the burden of proof on the subject of infringement, there is another defense which is fatal to complainant's right of recovery, and that is that no right to sue and recover damages for the infringement was conferred by the assignment of the patent to complainant. Said assignment is in the usual form and does not in terms give the complainant corporation the right to sue and recover damages for infringement prior to its date, September 17, 1909. The purchase of the job lot was from the Auto Spring Repairer Company, a partnership and licensee under the patent in suit; and Petze, the patentee, did not assign the patent until nearly a year after the sale of the so-called job lot. It has many times been judicially decided that a mere assignment of a patent does not transfer a right of action for patent infringement. Walker on Patents (4th Ed.) § 277. Assuming that Petze retained the right to sue for infringement of his patent, the wording of the assignment does not entitle the assignee to recover damages for infringement before its date, or for infringement during the time the partnership was a licensee. Leadam v. Ringgold (C. C.) 140 Fed. 611; Moore v. Marsh, 7 Wall. 515, 19 L. Ed. 37; Kaolatype Co. v. Hoke (C. C.) 30 Fed. 444; Sup. Drill Co. v. Ney Mfg. Co. (C. C.) 98 Fed. 734.

The bill must be dismissed, with costs.