## SINKO TOOL & MFG. CO. v. CASCO PRODUCTS CORPORATION.

### No. 6050.

Circuit Court of Appeals, Seventh Circuit.
May 13, 1937.

Russell Wiles, Bernard A. Schroeder, John H. Lee, and George A. Chritton, all of Chicago, Ill. (Dyrenforth, Lee, Chritton & Wiles, of Chicago, Ill., of counsel), for appellant.

Thomas J. Byrne, of New York City, and Henry M. Huxley, of Chicago, Ill., for appellee.

Before SPARKS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

LINDLEY, District Judge.

Upon reconsideration, the former opinions are withdrawn and this opinion is adopted as the final expression of the court.

This is an appeal from a decree awarding a preliminary injunction against appellant in a suit upon five patents to Cohen, Nos, 1,710,348, 1,710,531, 1,944,923, 1,944,-922, 1,944,424, and one to Copeland, No. 1,919,159. Appellant relies upon a license agreement, entered into on February 17, 1934, whereby appellee licensed appellant under the foregoing patents to make cigar lighters to be sold as "attachments, replacements, or accessories" to automobiles.

Appellee reserved exclusive right to sell lighters made under the patents to be sold as "standard equipment" on automobiles. Appellant admitted "the validity of said letters patent" and contracted, "for the purpose of the agreement," that it would "take no steps or proceedings for the purpose of contesting the validity of said patents."

Cigar lighters sold as accessories are clamped on dashboards, and are known ordinarily as the "surface type." Those sold for standard equipment usually pass through a hole in the dashboard and are known as the "well type." Some of the latter, however, are sold for replacement and, in such case, are covered by the license. In so far as the inventions of patents are concerned, the "accessory" devices and those intended for "standard" equipment are precisely the same mechanism.

The trial court found, first, that appellant had sold standard equipment lighters infringing the patents; second, that appellant had manufactured and sold infringing accessory lighters, which appellant contends are not within the patents; and that appellant should maintain prices thereon as provided in the agreement; and, third, that appellant should apply the patent numbers to certain surface type lighters sold as accessories, which appellant contends do not infringe and are not within the license agreement.

Appellant complains that the trial court erroneously concluded that it had no right to consider the prior art for any purpose; that it should have examined the same to determine the scope of the patents relied upon; that as to certain devices it should have considered the prior art for the purpose of determining validity; and that the evidence did not justify a preliminary injunction.

Generally speaking, a licensee under a limited license may deny validity when he is charged with infringing by exceeding his license, for the license raises no estoppel against the licensee in respect to the noninclusive type of his product. It exempts the licensee from suit for infringement so long as he makes the licensed device. It does not estop him in any way from making devices which are not within the class licensed, for as to such products the licensee takes nothing by the license, no immunity from suit and assumes no obligation respecting same. In Indiana Mfg. Co. v. Nichols & Shepard Co. (C.C.) 190 F. 579, 584, the court said:

"The estoppel must be mutual. The licensee may not deny the patentee's title to the monopoly; the patentee may not deny the licensee's right to act under that monopoly. It is difficult to see how, when the act involved is the manufacture of a certain machine, at a specified place or in a specified way, and both complainant and defendant agree that there is no contract in existence permitting the act in controversy, either party can be estopped by a contract relating to something else. * * * It seems * * * quite clear that the complaining patentee cannot, at the same time, maintain the position that the act of the defendant licensee, manufacturing what is said to be the patented article, is outside the conditions of the license, and, therefore, not authorized by the license, and also the position that his title to the monopoly is conceded by the license and, therefore, cannot be disputed."

See, also, Tate v. B. & O. R. R. Co. (C.C.A.) 229 F. 141; Symington Co. v. National Malleable Castings Co. (D.C.) 257 F. 564; Underwood Typewriter Co. v. E. C. Stearn & Co. (C.C.A.) 227 F. 74; Auto Spring Repair Co. v. Grinberg (C. C.) 196 F. 52; International Burr Corp. v. Wood Grinding Service (C.C.A.) 34 F.(2d) 905.

But we doubt the applicability of this doctrine to the present case. Paragraph 20 of the bill of complaint, admitted by appellant's answer, charges that appellant has the right to use all of the claims and inventions of the patents to make devices so long as it sells them to a certain type of trade only, namely, the accessory trade; but that it may enjoy none of the inventions in selling devices to the prohibited trade. Furthermore, under paragraph 1 of the contract, appellant was granted, "under the conditions herein referred to, the right and license to manufacture and sell * * * devices embodying, * * * the inventions * * * claimed in the aforesaid Letters Patent, * * * to the full end of the term * * * unless this agreement is sooner terminated." In paragraph 4 of the contract, appellant agreed to pay royalties of 5 per cent. on devices "embodying the inventions of said above-enumerated Letters Patent." Thus we see

that the grant involved all of the inventions and claims.

By paragraph 9 appellees reserved the exclusive right to sell lighters to manufacturers for standard equipment on automobiles manufactured by the respective companies, and for no other purpose. This limitation is not a reservation of any part of any one or more inventions; it is a limitation only of the trade to which appellant may sell what it manufactures under all the patents. The equipment in each field is the same, the only difference being that the one is installed by the manufacturer and the other by the service man or dealer.

"For the purpose of the agreement," appellant agreed that it would take no steps or proceedings contesting the validity of the patents. Inasmuch as the purpose was to grant all of the inventions to appellant for the accessory trade and to restrain it from entering the standard equipment trade with the same mechanism, it must have been the intent of the covenant to bind appellant to estoppel equally as to both sorts of equipment.

Ordinary equitable principles require that the acceptor of such a license with such a limitation must understand that he is not to enjoy the rights reserved by the limitation and that the estoppels proper to be urged against him as a licensee of the inventions apply not only to such devices as are sold in the licensed field but also to those sold in the limited field, where, as here, the mechanism of each is the same. It is just as though appellant had covenanted not to sell to chain stores.

Under the facts of this case, we conclude that there is no limitation upon the estoppel against the licensee; that, inasmuch as appellant is a licensee for all the inventions for a particular trade, he is not in position to attack the validity of the patents, either when he sells to that trade or when he breaks his agreement and sells the same mechanism to the prohibited trade. In neither instance is the question of validity open to him.

Nor do the cases cited by appellant, when properly analyzed, militate against this conclusion. In Tate v. B. & O. R. R. Co., 229 F. 141, 142 (C.C.A.4), the license was at an end. Consequently the estoppel was at an end. The court there said: "The rule is that a licensee is estopped to deny the validity of the patent as long as he is acting under it; but when the license is at an end, whether by reason of expiration of time or the completion of the number of patented articles for which it provided, there is no longer any contract relation, and there is no ground of estoppel."

In Indiana Mfg. Co. v. Nichols & Shepard Co. (C.C.) 190 F. 579, there was no trial. It was there said that the defendant had a license nonexclusive in character and that he was to pay royalties and comply with other conditions. The defendant had repudiated the license; quite properly, therefore, he could attack the validity of the patent, and the question was what could be done against him as an infringer. Judge Denison's real estate analogy does not seem applicable to the present case. A landlord claiming title to lots 1, 2, and 3, and leasing to a tenant lots 1 and 2, may not invoke his lease as an estoppel against the tenant entering upon lot 3. But appellant was not a limited licensee of a part of what was owned by the licensor. It was a licensee of all of what was owned by the patentee with a limitation only upon the field of sales. The analogy would exist in case of license of certain claims and not of others. Under such a situation there would be no estoppel to deny the validity as to the claims not licensed. In Symington Co. v. National Malleable Castings Co. (D.C.) 257 F. 564, what is said as to estoppel seems to be obiter dictum, for the court did not hold the patent invalid but decided the case upon the basis of noninfringement. In what was said Judge Sanborn seems to have relied upon the real estate analogy of Judge Denison. In our opinion the analogy does not exist here. In International Burr Corp. v. Wood Grinding Service (C.C.A.) 34 F.(2d) 905, though the court denied estoppel, it is apparent that, while the bill alleged that the defendant's license was still in force, it was stipulated at the trial that the license had been terminated two months before the bill was filed. Obviously the estoppel did not extend beyond the term of the license.

We believe, therefore, that the cases cited by appellant are not applicable to the present situation; that the estoppel of a licensee applies to appellant as to any and all mechanisms made under the patents, whether sold to the accessory trade or to the standard equipment trade; that the license is not one of limited scope re-

stricted to a part of the invention, under which the licensee is free to attack the validity of the licensed patent or claim when acting outside of the licensed portion, but is one of unlimited scope granting the enjoyment of all the inventions of the patents. It is entirely proper that, as a part of the consideration for the grant of such an unlimited scope, appellee should exact a covenant that no sales of licensed article should be made in an excluded field. When the field is invaded by the licensee, he is greeted by an estoppel of his own creation and by his covenant recognizing the same.

■ As is conceded, it was the court's duty here to determine whether certain devices made by appellant, claimed by it to be beyond the teachings of the patents and by appellee, to infringe, do in fact infringe. As to any such devices appellant clearly had the right to have ascertained by the court the proper scope of the inventions of the patents. Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316; Noonan v. Chester Park Athletic Club Co., 99 F. 90 (C.C.A.6); Martin & Hill Cash-Carrier Co. v. Martin (C.C.A.) 67 F. 786. It follows, therefore, that it was proper for the trial court to examine the prior art for the purpose of determining as to devices claimed not to infringe, the scope of the patents.

Thus in Noonan v. Chester Park Athletic Club Co., 99 F. 90, 91 (C.C.A.6), the court said:

"But this estoppel, for manifest reasons, does not prevent him from denying infringement. To determine such an issue, it is admissible to show the state of the art involved, that the court may see what the thing was which was assigned [licensed], and thus determine the primary or secondary character of the patent assigned, and the extent to which the doctrine of equivalents may be invoked against an infringer. The court will not assume against an assignor, and in favor of his assignee, anything more than that the invention presented a sufficient degree of utility and novelty to justify the issuance of the patent assigned, and will apply to the patent the same rule of construction, with this limitation, which would be applicable between the patentee and a stranger."

■ We proceed to a consideration of the scope of the patents. In Cohen No. 1,- 944,922, Claim 2 is as follows: "A heating element for cigar-lighters comprising a spiral coil of high resistance wire; a pin to which the inner end of the wire is secured; a mica plate having a hole adapted to snugly fit said pin, the spiral coil being supported on said mica plate; a supporting plate having a passage for the pin substantially larger than the diameter of the pin and having a dished portion adapted to snugly fit said mica plate; and means for holding the mica plate in said dished portion to space the pin from the edge of said passage in the supporting plate to electrically insulate the pin from said supporting plate."

Zecchini, No. 1,437,701 in the prior art, seems to be practically identical except for three points. Whereas Cohen recommends a mica washer, Zecchini claims an insulating washer. It would seem clear that it did not involve invention to specify mica as an insulating device. It had long been known as such. In the second place, Cohen dispenses with one of Zecchini's washers. In this respect appellant apparently follows Zecchini. In the third place, Zecchini, as reproduced in appellant's construction, apparently lacks the supporting plate and dished portion specified by Cohen; rather he and appellant used a comparatively deep cup, much deeper than anything Cohen suggests, which extends beyond the insulating washer. Nor does the cup fit the washer in the sense that Cohen's shallow dished depression does. It seems apparent that the scope of Cohen's invention is extremely limited, and that on the evidence before us, infringement is not clearly shown.

Cohen, No. 1,710,531 was charged to be infringed by appellant's standard equipment lighter. Claim 17 is as follows: "In an electrical device of the class described, a holding device and an igniting device adapted to be supported on the holding device for quick removal, one of said devices having a plug forming a contact member, and the other having a socket to receive the plug and including a sleeve forming a contact, an integral portion of one of said devices being normally biased to resiliently engage the surface of the other of the devices to frictionally hold the plug member in the socket

with the plug in electrical engagement with the sleeve of the socket."

Zecchini and appellant's device differ from this claim in the character of the "biased" part. Cohen made his of integral character, whereas Zecchini has a socket and a removable plug type lighter. Appellant claims very plausibly that it follows exactly Zecchini and not Cohen in this respect. The evidence presented offers no clear showing of infringement.

In Copeland, No. 1,919,159 two claims are relied upon. Claim 19 calls for four elements, a body, a cavity open at one end of the body, a resistance heater in the cavity, and a contact at the mouth of the cavity to engage a contact on the base. Zecchini has a body, and at the end thereof an open metal cup forming an open cavity in which there is a heating element, one end of which is attached to the metal cup. Copeland uses a separate contact at the mouth, and it is very plausibly argued that, in this respect, appellant's device follows Zecchini and not Copeland.

Claim 20 of Copeland is as follows: "An electric cigar lighter comprising a holding device; a removable translating unit adapted to be removably supported on the holding device; a resistance element; a circuit for the latter including a source of E.M.F., a pair of contacts on the holder, and a cooperating pair of contacts on the holder, and a cooperating pair of contacts on the unit; at least one of said contacts being movable into electrical engagement with another contact after said pairs of holder and unit contacts are electrically engaged and as a result of the continued movement of the translating unit in a straight line relative to the holding device."

A translating unit includes all structures which turn electricity into another form of energy, such as motors, heaters, lamps. In the art with which we are now concerned a translator is a heater. Consequently the resistance element is the active part of the translator. So, when the claim apparently distinguishes a translating unit from a resistance element, it must be interpreted as including both as one, for the resistance element is the active part of the translator. With this explanation in mind, upon examination of the claims and application of appellant's device and comparison of the same with Zecchini, keeping in mind the resulting limitations, it is very doubtful, to say the least, whether appellant infringes.

Cohen, No. 1,944,924, covers a cigar lighter with a hollow shell-like body of translucent material. This contains a heating element which, when sufficiently hot, gives off light through the body, causing it to glow in its entirety. It was old (Waggoner 1,486,314) to provide a transparent glass jewel which glows when the resistor is hot. In appellant's device the body does not glow as an entirety but has certain small points indicating heat, as in Waggoner. The alleged novelty of Cohen, in this respect, is in the glowing of the entire body as distinguished from the limited glowing of a limited portion, as in the prior art. It seems doubtful, at least from the evidence before us, that appellant infringes in this respect.

The decree of the District Court directed appellant to apply certain patent markings to four devices, Exhibits 13, 14, 15, and 16, and to maintain the price thereon in accordance with the license agreement. It is clear, as to some of these devices, that markings are applicable, but upon the present record we are unable to say with certainty as to which such is true.

Appellant insists that Exhibit No. 13 is not covered by appellee's patent. It is a cheap structure, made to sell at a low price. To show that it did not come within the proper scope of appellee's patents, appellant offered two Langos patents owned by it. Cohen, No. 1,710,531, supra, is said to cover this device. Upon examination of the alleged infringing device we find that it apparently follows the teachings of the earlier Langos patents. There are slight differences in form, but they are apparently immaterial. It seems probable, upon the present evidence, that the Cohen patents must be held so limited that appellant does not infringe.

Cohen No. 1,944,923 is directed to details of a bracket construction whereby the lighter is affixed by a clamp to the running board of an automobile. It appears that the structure of lighter 13 is quite at variance with and apparently not within Cohen's teachings.

Exhibit 14 is said to infringe Cohen, No. 1,710,531. Appellant insists that it does not infringe. The device has a hollow tubular support of very stiff metal

so cut as to form a bayonet slot so that an ordinary outlet plug may be inserted in the socket thus provided. An examination of the tube indicates that it is so stiff that slotting it does not provide the elastic springy arms which are the essential point of the Cohen patent. Again we find it doubtful whether there is infringement.

Exhibit 15 is said to infringe three Cohen patents and the Copeland patent. Without prolonging discussion, the contention of appellant of noninfringement appeals to us upon the present record as both reasonable and plausible. The same is true of Exhibit 16.

Appellant insists also that, when a patent license contract contains price limitations as here, no estoppel to deny invalidity is created; that price limitations in patent licenses are permitted only because, as the patent creates a monopoly, the public is not entitled to that price competition which is insisted upon in subject matter free of patents; that, if the licensor and licensee seek to fix the price of products not covered by the patent, such action is void as violating the antitrust statutes; that, when they seek to fix prices under invalid patents, they are affixing prices on commodities as to which no monopoly exists and as to which, consequently, there can be no legal fixing of prices; that public policy demands free competition in unpatented articles. In view of our conclusions, it would seem wholly unnecessary to decide this issue at the present time and that to do so may never be necessary to a final determination of the issues involved.

We have refrained from passing finally upon the merits of these controversies, as they are not before us upon any issue other than the alleged improvident grant of a temporary injunction. This writ was issued upon the bill of complaint, the answer, affidavits, and certain patents. Obviously, certain of the prior art was not considered, because the court erroneously felt impelled to hold appellant to a strict estoppel to show that the prior art limits materially the scope of patents in-

volved. It is appropriate and desirable that a final decision upon the merits shall be had only after full and complete hearing. This court in Standard Elevator Co. v. Crane Elevator Co., 56 F. 718, 719 (C. C.A.7), said:

"The purpose of the interlocutory writ is not to conclude the question of right, but to protect against material injury pending the litigation. In patent cases, to warrant the writ, not only must the infringement be without reasonable doubt, but the rights of the patentee must be clear. * * *

"It would, we think, be most unsafe to determine this controversy without full and orderly proof. It would be most unwise to imperil, and presumably wholly ruin, the large capital and interests involved in the business of the appellants, by arresting the enterprise in advance of a final decree, when the damages which the appellee may sustain can be compensated in money. The financial ability of the appellants to so respond has not, in our judgment, been successfully attacked."

So, here, we are of the opinion that the evidence falls short of the requirements to support a temporary injunction —clear proof of infringement and of appellant's inability to respond in damages. The scope of the patents is sharply contested; the District Court thought it had no right to inquire into any limitations upon this scope. We are not only loath but without power to find that the rights of appellee are so free from doubt as to justify the issuance of a temporary injunction, much less to pass upon the merits of the issues involved.

Nothing herein shall be construed by the District Court as a final adjudication upon the merits of the existing controversies as to infringement, the proper interpretation of the limitations of the patents involved, or the applicability of the prior art.

The decree of the District Court is reversed, with directions to dissolve the injunction and to proceed in accordance with the views herein expressed.