**KESSEL et al. v. VIDRIO PRODUCTS CORPORATION.**

No. 7203.

Circuit Court of Appeals, Seventh Circuit.

June 5, 1940.

Rehearing Denied July 18, 1940.

Russell Wiles, Jules L. Brady, George A. Chritton, and Sol A. Hoffman, Chritton, Wiles, Davies, Hirschl & Dawson, all solicitors all of Chicago, Ill., for appellant.

Sidney J. Wolf, Arthur Wolf, J. H. Jochum, Jr., J. R. Cohler, and James J. Kelly, all of Chicago, Ill. (Sidney J. Wolf, J. Robert Cohler, and J. H. Jochum, Jr., all of Chicago, Ill., of counsel), for appellees.

Before EVANS and KERNER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

The District Court found defendant guilty of infringement of patent to Kessel No. 2,134,048, and ordered an injunction and accounting. Defendant, licensee of plaintiffs, appeals, contending that the device complained of, a small portable electric washing machine, is not within the scope of the patent properly construed and interpreted.

Kessel's application was successor to one made by himself and Goldblatt for the identical device. Goldblatt assigned his interest to Kessel, admitting the latter's priority of invention. Kessel's file wrapper is void of reference, as it came subsequent to full consideration of the earlier joint application, as shown by the contents of the file wrapper relating thereto.

■ Defendant as a licensee is estopped to deny validity of that which it is licensed to use. When the field is invaded by a licensee, he is faced by an estoppel of his own creation. Sinko Tool & Mfg. Co. v. Casco Products Corporation, 7 Cir., 89 F.2d 916-919; Westinghouse Electric & Manufacturing Co. v. Formica Insulation Co., 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316. However, in determining whether a specific product of the licensee is within the patent, that is, within the true scope of the claims, properly interpreted, no estoppel exists, and in making such determination the court may rightfully consider the prior art. Westinghouse Electric & Manufacturing Co. v. Formica Insulation Co., 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316; Sinko Tool & Manufacturing Co. v. Casco Products Corporation, 7 Cir., 89 F.2d 916.

Kessel's claim 2, probably his broadest, is as follows: "A washing machine embodying an article container, a closure therefor, an agitator shaft depending from the closure, a motor for operating the said shaft, said motor disposed outside of the container, a hood for the motor, means for supporting the hood by the closure, said hood having an air inlet and an air outlet, said inlet and outlet being spaced from each other, and a fan within the hood for drawing air into the hood through said inlet, circulating the air across the motor and forcing the same directly against said closure, and causing the air to flow out of said outlet opening, said fan being disposed above the motor, between the inlet and outlet of said hood,

adjacent the inlet and connected with the motor shaft."

The prior art, perhaps best exemplified by the patent to Engberg, presents a combination which element for element is well-nigh identical with that of Kessel. It differs only in that Kessel specifies in his various claims that the base of the hood be "spaced" from the cover, the motor supported "above the casing" and his fan "disposed above the motor," thus forcing air "directly against the closure." When the application of Kessel and Goldblatt was presented to the Patent Office, the claims were rejected, Engberg being cited. Amendments followed and again the claims were rejected. Following this the claims were cancelled and new claims filed, in which the fan was clearly defined as being "disposed above the motor." The District Court found the only difference between the two machines to be that one "has a vertical motor and in the other, it is horizontal." Above the vertically disposed motor of Kessel is his fan. In Engberg, the fan is at one side. This difference in arrangement represents the only substantial distinction between the two.

Kessel argued in the Patent Office that his arrangement produced not only cooling of the motor but also, by being above the closure, that is, the lid of the container, it additionally served to force the air down directly against the cover and thus kept it cool, facilitating comfortable manipulation of the latter without burning the hands of the operator. Only after he clearly specified in his claims that the fan was disposed above the motor and directed the air down against the closure as well as against the motor, were the claims allowed over Engberg.

The Patent Office had first taken the position that no invention grew out of placing the fan above the motor and remarked that the same function existed, whether it was above or at the side. Thereupon the applicant endeavored to persuade the examiner that there was an inventive difference and a resulting advantage in his specific arrangement. Thus, Kessel said he believed that the examiner was in error in holding that there was no invention in placing the fan above the motor and that it had the same function there as at the side. He repeated that there was a decided advantage in his prescribed arrangement of the parts and especially "in placing the fan above the motor"; that thereby the air currents "will be forced directly against the motor, the transmission housing and the closure, * * * the motor and operating mechanism * * * kept cool and the temperature of the cover at such degree as not to burn the hands of the operator." This specific arrangement, applicant urged, distinguished his device from Engberg, saying that in the latter "the motor is mounted so that its shaft will rotate on an axis transverse to the axis of rotation of the agitator and the fan blades will only draw air currents "in and force them across the motor against the agitating mechanism"; that Engberg disclosed no forcing of air upon the closure; that there is a "decided advantage in placing the fan above the motor" * * * "over Engberg's horizontal arrangement of the motor and fan as shown in the Engberg patent." In answer to this the examiner commented that "in order to support the claimed functions the fan should be above the motor and disposed to direct a blast down on the motor." Complying, applicant put the claims in their present form, making it clear that his fan was placed on a vertical axis above the motor and over it so as to direct the air downward and upon the motor, the operating mechanism and the closure.

 Thus the applicant complied with the suggestions of the examiner and by adopting them and clinging to the specific arrangement claimed, secured a patent for a device differing for all practical purposes from Engberg's horizontal placement only in the vertical arrangement of Kessel. Consequently, his claims must be read and interpreted with reference to the rejected claims and to the then existing state of the art. They cannot be construed to cover either what was rejected by the Patent Office or disclosed by prior devices. Hubbell v. United States, 179 U.S. 77, 21 S.Ct. 24, 45 L.Ed. 95. As said by Mr. Justice Sanford in I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 430, 47 S.Ct. 136, 141, 71 L.Ed. 335, "where an applicant whose claim is rejected on reference to a prior patent, without objection or appeal, voluntarily restricts himself by an amendment of his claim to a specific structure, having thus narrowed his claim in order to obtain a patent, he 'may not by construction, or by resort to the doctrine of equivalents, give to the claim the larger scope which it might

have had without the amendments, which amount to a disclaimer.' Weber Electric Co. v. E. H. Freeman Electric Co., 256 U.S. 668, 677, 41 S.Ct. 600, 603, (65 L.Ed. 1162, [1167])." It follows, that by his acceptance of the suggestions of the Patent Office, Kessel has disclaimed everything other than the specific arrangement disclosed in his amended claims and is now estopped to assert that they cover a device in which the fan is placed upon a horizontal axis.

It does not become plaintiffs to assert now that the use of the words "above the motor" do not mean above in a vertical sense but mean "up-stream" in the flow of the air. Any such intention is negatived by the rejection of the Patent Office, its suggestions as to the form of the claims and the acquiescence of Kessel in such suggestions, all of which disclose a clear final intent to limit the claimed invention to a combination wherein he placed the fan upon a vertical axis as distinguished from the horizontal axis of the prior art. To attribute to Kessel now this wider conception, wherein the fan might well be placed on the side as well as at the top, is to ignore the very distinguishing element which led to the granting of his patent.

Defendant's device does not follow the arrangement of Kessel. Except for outer form and an additional casing it follows the disclosure of Engberg. The motor and fan are mounted upon a horizontal axis lateral to the agitator shaft and the two shafts connected by a worm and gear transmission. Air is brought in by the fan from the side and blown across the mechanism out of holes in the casing at the opposite side. In Kessel, the fan and motor are mounted above the agitator on a vertical axis and the air is forced downward against or upon the lid or cover. This was the specific arrangement adopted after the examiner's criticism. For the very reason that Kessel's invention was distinguished from Engberg, so defendant's device must be distinguished from Kessel and so does not infringe.

Plaintiffs insist upon another distinguishing feature in Kessel's device in the presence of steam vents in the cover, thus affording escape of steam when the washer is placed over heat and boiling follows. They insist Engberg locked his cover in place and thus prevented escape of steam. Each claim of Kessel does state

that the fan is located above the motor and blows the air directly against the cover, but other distinguishing features, it seems to us, are improperly read into them. Engberg did lock his cover against rotation with the agitator but not against vertical lifting. It is entirely consistent with his disclosure that the locks be so built that the cover will rise with pressure from within and drop back upon the escape of steam. To our minds, the invention of Kessel, which cannot be impugned here, did not lie in the prescription of vents for the escape of steam. Such a specification does not amount to invention. Rather, some such provision is an obvious necessary expedient in the use of any container wherein steam is generated. Kessel's invention emanated only from his specific arrangement of parts.

In view of our conclusions, it is unnecessary to give consideration to other errors suggested by defendant. The decree of the District Court is reversed with directions to dismiss the complaint for want of equity.