### ALEMITE MFG. CORPORATION et al. v. ROGERS PRODUCTS CO., Inc.

Circuit Court of Appeals, Third Circuit.
January 23, 1930.

Petition for Rehearing Withdrawn March 25, 1930.

No. 4058.

Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., and Fish, Richardson & Neave, of Boston, Mass. (Lynn A. Williams, of Chicago, Ill., Stephen H. Philbin, of New York City, and Benjamin F. Wupper, of Chicago, Ill., of counsel), for appellants.

Dean, Fairbank, Obrieght & Hirsch, of New York City (Clair W. Fairbank and George C. Dean, both of New York City, of counsel), for appellee.

Before BUFFINGTON, Circuit Judge, and THOMSON and AVIS, District Judges.

THOMSON, District Judge. This case involves the question of validity and infringement of claim 2 of patent No. 1,377,023, of Bernard S. Nelson, for which a patent issued May 3, 1921. The invention relates to lubricating devices, and more especially to that class of articles known in the trade as "grease guns," which are used for the purpose of quickly and easily supplying a regulated quantity of lubricant to parts of automobiles and other mechanism receiving periodic lubrication. The object of the invention was to provide a device of the character described, which was well balanced, easily handled and manipulated, readily assembled and taken apart for inspection, avoiding the waste of lubricant while in use and the cost of manufacture reduced to a minimum.

Claim 2, the only one in suit, is as follows:

"A lubricating device comprising a cylinder having a bore and inlet port and a discharge passage, a plunger reciprocating within said bore, a lubricant receptacle attached to and depending from said cylinder and having its interior communicating with said bore through said inlet port, a spring actuated piston within said receptacle for feeding the lubricant within the receptacle through said inlet port into said bore of the cylinder, means for locking said piston against movement in the said receptacle, and means connected to said plunger and cylinder for reciprocating said plunger within the bore to withdraw the lubricant from said receptacle into said bore and eject the lubricant from the bore through the discharge passage."

The defendant company denied validity by reason of anticipation and also denied infringement. After hearing, the court below dismissed the bill, and from the decree so entered this appeal is taken.

Confessedly, all the elements entering into this device are old and well-known, but it is claimed by the plaintiff that in combination they form a new and useful invention.

Prior to 1918, one Gullborg invented, and through the Alemite Die-Casting Company, put upon the market, what is known as the Alemite system of automobile lubrication, which rapidly displaced all other methods and was very generally installed as factory equipment. Gullborg's invention was covered by patent. The Alemite system, as made in 1918, and largely as made and sold at the present time, comprises a grease gun—a receptacle from which grease may be discharged under pressure—a conduit and coupling attached to the grease gun, and certain lubrication receiving fittings. This device was sold in great quantities, and at the time of the application for a patent by Nelson, in 1920, was the standard equipment on several makes of cars. Under this Alemite system, automobile owners largely lubricated their own machines, and this screw type device served the purpose well, as it could develop pressure in the neighborhood of from 500 to 650 pounds per square inch. That device was so far superior to the former methods of lubrication (grease cups, which had to be filled with finger or ladle, that it immediately displaced them.

Experience, however, showed that certain bearings of an automobile would, after a

650

time, become caked or frozen, which was the result of the packing of dirt and grit in the bearings. The pressure developed by the ordinary screw type compressor was found not sufficient to remove this caked material, and this required the bearing to be taken completely apart and cleaned with gasoline or other means. It was an important problem how to dislodge this caked lubricant, which had become frozen. Different methods were employed, but without much success.

In 1921, one Shere invented a grease gun, which was so constructed that an extremely high pressure, necessary to dislodge the caked material in tight or frozen bearings, could be obtained. His idea was brought to the attention of the Harshaw Corporation, a patent holding company, under whose patents the Gat Gun Lubricating Corporation held an exclusive license. During the prosecution of the application for a patent filed by Shere, the Patent Office cited the Nelson patent as a reference, and it was found that this patent anticipated and claimed the essential features of the Shere gat gun. The result was that the Shere Metal Corporation, predecessor of the Gat Gun Lubricating Corporation, purchased the Nelson patent. The Shere grease gun, which embodied the Nelson invention, formed the basis of a most flourishing business. The device was marketed under the trade-name "Gat Gun" and was far superior to anything then on the market for use by lubricating stations, garages, and others. The evidence shows that 74,000 of these devices were sold by the Gat Gun Lubricating Corporation, which forced the Alemite Corporation to obtain a license under the Nelson patent to manufacture and sell this greatly improved grease compressor, which license it obtained. Since 1928, the Alemite Manufacturing Corporation, manufacture the Gat Gun compressors, paying royalties to the Gat Gun Lubricating Corporation.

By stipulation of record, defendant admits its manufacture and sale of the "ever ready gun," as shown in the drawing accompanying the stipulation. This grease gun differs from plaintiff's device, namely, in the type of means used to lock the piston against movement in the receptacle, and in the kind of lever used to reciprocate the plunger.

In answer to the position of the defendant that there was no such invention in the device as justified the grant of the patent in suit, counsel for appellee made this statement: "A hand grease gun having a high pressure cylinder and plunger located at right angles to one end of a detachable grease receptacle and provided with a lever connected to *said* plunger and *cylinder* for delivering a man's pressure producing power to said plunger and which, therefore, lies parallel to the receptacle which, in turn, has a spring pressed piston and lock to keep the plunger cylinder primed with grease and to permit easy refilling."

The invention of Nelson lies in the combination of elements, producing a new and useful result. In Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 325, 29 S. Ct. 503, 505, 53 L. Ed. 816, the United States Supreme Court in its opinion said: "A combination is a composition of elements, some of which may be old and others new, or all old or all new. It is, however, the combination that is the invention, and is as much a unit in contemplation of law as a single or noncomposite instrument."

The courts have frequently declared that invention must be determined by the evidence in each particular case. Here the evidence has established that the Nelson gun has very many advantages over the screw type compressor. It is capable of developing pressure six or more times as high as the screw type compressor, because the applied force is exerted upon a plunger of relatively small area. In this device, the size of the plunger may be reduced to produce practically any desired discharge pressure, without reducing the capacity of the gun for holding the lubricant. In the screw type compressor, to increase the discharge pressure, the diameter of the cylinder must be reduced.

In the Nelson device, the link and lever transmit practically all of the power applied to the lever. In the screw type, the screw-threaded piston wastes much of the power in friction. The movement of the hands in the Nelson type is much more effective in delivering the grease under high pressure. It is much quicker in operation, in applying the power and disconnecting the coupler, than the slow, twisting movement of the screw. A single rapid movement of the piston puts the barrel in condition to be refilled. In the screw type, the screw must be rotated, so as to move the piston the entire length of the barrel. The grease may be expelled from the Nelson gun suddenly, with the effect of an explosion, upon a frozen bearing. The screw type is ineffective to accomplish such result. When we add to these cheapness, simplicity of construction and assembling, and its great commercial success, we have before us a combination of elements, old in themselves, but

producing such a new and useful result as clearly stamps it with the merit of invention.

We are of opinion that nothing in the prior art cited by the defendant anticipates the Nelson invention; that is, the complete combination of elements described in claim 2 of the Nelson patent. Some of the patents of the cited prior art show somewhat similar structure, but are intended for an entirely different use. Some, although they relate to the art of lubrication, fail to disclose the Nelson combination.

All attempts to distort and magnify prior nonanalogous art by way of anticipation have been condemned by the courts. Many of these citations include patents upon devices designed for dispensing various forms of liquid, as liquid soap in toilets, devices for fire-extinguishing purposes, for injecting oil into steam pipes supplying steam to engine cylinders, and for dispensing and measuring liquids, such as oil from storage tanks of various kinds. These are nonanalogous arts. In none of them do we find the combination of elements in the Nelson patent.

■ We next reach the question of infringement. Perhaps the only tangible position as the basis for nonfringement relates to the use of the word "depending" in claim 2 of the Nelson patent. That claim begins its enumerations of the elements which make up the combination as follows: (1) A cylinder having a bore and outlet port and a discharge passage. (2) A plunger reciprocating within said bore. (3) A lubricant receptacle attached to and depending from said cylinder, etc., the word "depending" here meaning suspended or hanging.

It is, therefore, claimed that, in the Nelson patent, the receptacle hangs from the plunger cylinder, while in defendant's invention the receptacle does not hang from the plunger cylinder. The use of the word "depending" was an apt way of saying that the receptacle is attached to the cylinder, in such a way that the two have a right-angle relationship to each other.

It would be futile to give to the word "depending" the meaning of gravitational hanging. This becomes apparent when it is observed that, although the Nelson receptacle hangs from the Nelson cylinder when the gun is held in one position, it does not hang from the cylinder when turned onto its side. The same is true of the defendant's gun. The receptacle there does not hang from the cylinder in one position, whereas it does in another.

We have no difficulty in concluding that defendant's device infringes on the device of the plaintiff. Our conclusion, therefore, is that claim 2 of the Nelson patent is valid and infringed, and that the decree of the District Court, dismissing the plaintiff's bill, should be reversed, and the bill reinstated; and it is accordingly so ordered.