## JULIUS LEVINE & CO. (MENASHA PRODUCTS CO., Intervener) v. AUTOMATIC PAPER MACHINERY CO., Inc.

### No. 4916.

Circuit Court of Appeals, Third Circuit.

Feb. 15, 1933.

Alexander Mabee, of Chicago, Ill., Duell, Dunn & Anderson, of New York City, and Charles W. Hills, Jr., of Chicago, Ill., for appellants.

George E. Middleton, of New York City (Pennie, Davis, Marvin & Edmonds, of New York City, of counsel), for appellee.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

This suit for infringement was brought by the Automatic Paper Machinery Company, assignee and patentee of Letters Patent No. 1,630,495, granted May 31, 1927, for a "Box for Paper Rolls." The bill was filed against Julius Levine & Company, a dealer in alleged infringing boxes, but, after intervening, the suit was defended by the Menasha Products Company, the maker, on issues of invalidity because of anticipation, lack of invention, aggregation, and of non-infringement. The court by its decree sustained and found infringed claims 1 and 2 of the pat-

ent, the claims in suit. The defendants by this appeal seek a review of all these issues save that of infringement which falls out of the case on their tacit admission that, if valid, the patent is infringed.

The box of the patent, made strictly under the claims, consists of a single piece of light cardboard, turned and fastened in the manner of the Brightwood box used in packing Uneeda biscuits, and shaped to hold loosely a roll of waxed paper. It is provided with a metal cutting strip, usually with a serrated edge, attached adjacent to the free edge of its front wall by outstanding and crimped down prongs. The cover of this one-piece box is provided with a flap which may lie over the front wall and thereby conceal its cutting edge, or which may—and does in use—extend behind the front wall and act as a guide for the paper as it is unwound and withdrawn from the enclosed roll.

█ If there is invention in the box of the patent, it is a very little one. We first doubted the presence of invention in a thing so simple. We next thought the art was so crowded that it could not attain a foothold. Yet when we looked at the art and regarded the problem, the functions and the result of the invention, the case took on a new appearance. An invention, though little, may be real.

Prior to the patent, waxed paper had come into favor for domestic use, particularly since the advent of electric refrigeration. It was sold mainly at grocery stores in practically five forms; loose rolled sheets which were unsanitary and difficult to handle and tear; loose flat sheets in an envelope, sanitary but inconvenient to handle and wasteful because, whatever the need, sheets of only one size were available; a continuous roll of flattened paper enclosed in an envelope and a roll of paper provided with a string extending from the outside through the core, which, being held taut, functioned as a cutter when the paper is torn off. Then there was the Hamersley package, made under Letters Patent No. 1,521,369, which consisted of a two-piece box containing a metal fixture on which a paper roll was mounted for rotation and provided with a cutting edge inside the box over which the paper could be cut off in any desired size as it unwound. The box sold for 50 cents.

There were in the patent art boxes of different types and with different means for holding, tearing or cutting paper, ranging in cost from 7 cents to $10 apiece. There was, however, no inexpensive waxed paper package on the market sold in a dispensing box and intended to be used just once.

█ Having looked into the practical art, and being presumed to know the patent art whether he actually knew it or not, Mast, Foos & Co. v. Stover, 177 U. S. 485, 20 S. Ct. 708, 44 L. Ed. 856, Marcalus, the inventor, after a survey disclosing what we have stated, sought to enter the low priced waxed paper trade. In doing so he was confronted by a problem with several factors. Paper in rolls was undoubtedly best adapted for intermittent use such as occurs in a kitchen. The roll must be packed preferably in a one-piece box with two characteristics: One, as a container or carrier; the other as a dispenser. As a container, the shape of the box is fixed by the shape of the roll; its other elements are of little importance. As a dispenser, definitely more is required. The box should be serviceable, particularly in the hands of a clumsy person, and should permit, and insure, even tearing or cutting of a sheet of paper, in any size desired, as it is withdrawn from the revolving roll. Also, it should be so simple that it could be made cheaply enough to be used once and then thrown away. And, finally, to gain the 10 cent retail trade both paper and package must sell to the wholesale trade for 5 cents, and to sell at that figure the box must not cost more than ½ cent. Here was a mechanical problem hedged about by a financial problem. However the former was solved, the latter controlled. Marcalus, being a machine designer, conceived the kind of box he wanted and designed a press for folding the box into shape and stamping on it the metal cutter with one blow. He thought the cost would be ½ cent.

On testing the trade as to probable purchase by the public of such a box and roll for 10 cents, wholesalers declined to consider it on the ground that there was presently no demand for it and there was not enough profit in sight to justify the expense of creating a demand. Thereupon Marcalus rented a small shack, built and installed his machine and three days a week worked all by himself in making the packages. On the other three days he and his wife canvassed the trade to sell and popularize them. From a small beginning the business increased almost incredibly. From sales of 17,000 in 1926, the first year of the venture, they leaped annually in terms of millions to 8,340,000 for the first nine months of 1930. They are sold by 175,000 grocery stores with annual gross

sales amounting, approximately, to $1,000,-000.

Into this inviting field the intervenor, Menasha Products Company, entered with a waxed paper package under the trade name of "Waxtex," consisting of a box and roll similar to those of the plaintiff's "Cut-Rite" package but not provided with a serrated metallic cutting edge. The defendant silicated the free edge of its box to make a cutting edge, that is, hardened and stiffened it by a solution of sodium silicate. The plaintiff does not claim that this box infringed. But the chemically stiffened edge softened in use and when, in consequence, trade fell off, the defendant-maker deliberately substituted the plaintiff's serrated metal cutting edge and thereby completed a box which the trial court held, and we think, fully infringes, if the patent is valid.

■ On the question of invalidity because of anticipation, though contested sharply at the trial, the defendants have little to say on appeal. We shall dispose of that issue briefly by holding, with the learned trial master, that the evidence shows beyond question two things: That every element of the box of the patent may be found here and there in the art, but nowhere is there a combination of those elements as the patentee brought them together in structure and function. The facts on which the latter conclusion is based fall within the law of Imhaeuser v. Buerk, 101 U. S. 647, 660, 25 L. Ed. 945; J. L. Owens Co. v. Twin City Separator Co. (C. C. A.) 168 F. 259; Skelly Oil Company v. Universal Oil Products Co. (C. C. A.) 31 F. (2d) 427, and compel a finding that the claims in suit are not invalid because anticipated. This finding, logically, compels another finding, which is that the combination, whether patentable or not, is new and therefore possesses the first essential of invention.

The next question is whether the combination is patentably new. The answer to that question depends on whether it involves invention, first, in view of the art and next, whether it is a combination or an aggregation.

Whether or not the combination involves invention in view of the art or is in truth a non-patentable aggregation are questions so related that we find it difficult to discuss them apart except by a patent-by-patent comparison of the instant invention with other inventions in the art, which has been done to our satisfaction by the trial court. Therefore we shall content ourselves with looking for and, if found, pointing to the things of an inventive character which the box in suit has, and which it does, in order to determine whether the box, found to be new in the art, produces a result new to the art.

Turning to the physical elements of the invention and their functions, the first is a box which, as we have said, is of the Brightwood type. It is admittedly old and no invention is claimed for the box itself. The top or cover of the Brightwood box has a flap extending from its outer edge, of about one-third its breadth, which is adapted to fall on the outside or inside of the front wall. When on the outside it performs no function that we can see; when inside, its function is to hold the cover closed. The cover of the box of the invention likewise has an extended flap but very much broader than the Brightwood flap and—what is significant—it is, save for a very small fraction of an inch, equal in breadth to the diameter of the front wall. It likewise is adapted to be on the outside or inside of the front wall. When on the outside it may, conceivably, aid the use of the box as a container by protecting the waxed paper roll from dust, in which there is nothing remotely inventive. When on the inside it performs, by reason of its greater breadth, a wholly different function from that of holding the cover in place as in the Brightwood box. Though not required by the words of the patent to be so broad, it is nevertheless required by the patent to be broad enough to function as a "guide." The flap, when on the inside, is in parallel relation with the front wall, extends down almost its entire depth, is separated from it only by the sheet of paper and is separated from the bottom only by the same sheet. Thus it becomes a sort of cardboard dike which regulates the flow of paper. When the paper is on its way out between the flap and front wall (topped with a saw cutter) the flap makes a frictional engagement with the paper between itself and the front wall and between itself and the bottom, thus creating a drag against the manual pull, which tightens the paper and insures a clean, regular tearoff across the serrated cutter and avoids the irregular tearoff which naturally occurs when a loose sheet is drawn across it. This arrangement, it is testified, adds greatly to convenience and economy in the use of waxed paper and is also "foolproof."

■ On this showing the package of the patent is not only new but, we think, patentably new in view of the art if in its several elements it is a combination, not an aggregation. Whether it is one or the other

**550**

depends on the co-action or separate action of its elements. Action, therefore, is the test. Applying that test at the risk of repetition, when the housewife, by one hand, begins to draw on the paper sheet, the several elements immediately come into play. The box, held in her other hand, acts as a base against which to exert a pull on the revolving roll; the inturned flap gives a new direction to the travel of the sheet and, as before stated, creates friction on the sheet, between the flap itself, the front wall and bottom, whereby the paper, being held back against the pull, is tightened and guided as it passes across the cutter; the cutter itself, thus called upon to sever the taut and resisting sheet of paper, makes a clean instead of a ragged cut. Thus it is plain all of the elements function cooperatively. Together they produce a new effect or result. Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719. As none could function in the way it does without another, none functions in its own separate way; each functions in a new way because of its neighbor and the result is distinctly something more than the sum of that produced by the separate parts. Everlasting Furniture Brace Co. v. Wittliff (C. C. A.) 44 F.(2d) 129; Siekert & Baum Stationery Co. v. Stationers Loose Leaf Co. (C. C. A.) 51 F.(2d) 326; Brinkerhoff v. Aloe, 146 U. S. 515, 516, 13 S. Ct. 221, 36 L. Ed. 1068; Radio Corporation v. Dubilier (C. C. A.) 59 F.(2d) 305; Id. (C. C. A.) 59 F.(2d) 309. We hold the invention a combination, which, if useful, is patentable.

■ That the invention of the patent is useful in the sense of the patent law is evidenced not only by its prompt nation-wide acceptance but by the admission of utility implicit in the defendants' infringement, Slattery v. Godfrey (C. C. A.) 13 F.(2d) 350, and by the tribute the defendant-maker disingenuously paid it when advertising the infringing boxes:

"Quality?—you can count on the country's largest manufacturer of waxed paper knowing how to make it. Convenience too— the best possible box construction for protection of the roll and the trouble-proof dispensing of it. And a metal cutting edge for handily tearing off exactly the required length," "the rest being kept fresh and clean until next time."

■ Cheapness of the box of the patent, a vital part of the problem, was with equal force stressed by the plaintiff and opposed by the defendants as an "element" of the invention. While an important result of the composition and construction of the thing invented, we hesitate to say that cheapness, properly to be considered in appraising an invention, Alemite Mfg. Corp. v. Rogers Products Co. (C. C. A.) 42 F.(2d) 648; A. L. Randall Co. v. Hanson (C. C. A.) 41 F. (2d) 596, is an ingredient of invention in this case where it might have come from the machine that made it so. Though a capital requirement, we doubt that cheapness, distinguished from simplicity and a consequent low cost, entered into the inventive concept of the box which involved something that structurally and functionally did not exist before. Pyrene Mfg. Co. v. Boyce (C. C. A.) 292 F. 480. However that may be, the quality of cheapness should not be credited entirely to any exclusive merit in the plaintiff's machine, for the defendant-maker evidently found a way of manufacturing the infringing box just as cheaply and thereby was enabled to take from the plaintiff the fruits of the invention. These observations are made to indicate that our consideration has been directed to invention in the box and that our judgment though influenced by its simplicity, has not been influenced by its cheapness. Nor has it been affected (except as to utility) by the commercial success of the invention which, when invention is in doubt, may, with caution, be weighed in its favor. Low v. McMaster (C. C. A.) 266 F. 518; Macbeth-Evans Glass Co. v. L. E. Smith Glass Co. (C. C. A.) 284 F. 193; Pyrene Mfg. Co. v. Boyce (C. C. A.) 292 F. 480; Armstrong Cork Co. v. W. & J. Sloane Co. (C. C. A.) 27 F.(2d) 644; Alemite Mfg. Corp. v. Rogers Products Co. (C. C. A.) 42 F.(2d) 648; Universal Rim Co. v. Firestone Steel Products Co. (D. C.) 289 F. 884; Individual Drinking Cup Co. v. Public Service Cup Co. (C. C. A.) 250 F. 620.

The decree holding claims 1 and 2 of the patent in suit valid and infringed is affirmed.