304

## MARCALUS MFG. CO. et al. v. AUTO-MATIC PAPER MACH. CO., Inc.
### No. 7191.

Circuit Court of Appeals, Third Circuit.
Feb. 23, 1940.

Pennie, Davis, Marvin & Edmonds, of New York City (George E. Middleton, of New York City, of counsel), for plaintiff-appellee.

Thomas G. Haight and Frederic W. Schumann, both of Jersey City, N. J., for defendants.

Before BIGGS, MARIS, and JONES, Circuit Judges.

BIGGS, Circuit Judge.

The appellee, Automatic Paper Machinery Company, Inc., has sued the appellants, Marcalus Manufacturing Company, Inc., and Nicholas Marcalus, charging them with infringement of claims 1 and 2 of United States Patent No. 1,630,495, for a box for paper rolls. Marcalus had invented certain improvements in a box for paper rolls, had filed his application describing the invention in the Patent Office on October 2, 1925, and thereafter assigned the application to the appellee. He caused the appellee to be incorporated and served as its vice president, treasurer and production manager until December, 1931. The patent, No. 1,630,495, issued to the appellee upon May 31, 1927, which thereupon proceeded to manufacture a box for paper rolls, known as the Cut-Rite box, under it. In December, 1931, all of the stock of the appellee, including that owned by Marcalus, was sold to R. B. Davis Company, Inc. Marcalus served as an officer of that company for a very brief period but soon quit its employ.

In 1929 the appellee brought suit against Julius Levine & Co., a dealer in boxes manufactured by Menasha Products Company, alleging infringement of Patent No. 1,630,495. The Menasha Products Company intervened and defended the suit. The District Court held the patent valid and infringed as to claims 1 and 2. Upon appeal this court affirmed the decree of the court below. Julius Levine & Co. v. Auto-

matic Paper Machinery Company, Inc., 3 Cir., 63 F.2d 547. Prior to our decision, the District Court had referred the cause to a special master for an accounting. During the course of this accounting it became necessary to decide whether another box manufactured by Menasha Products Company, known as the Waxtex box, infringed the claims 1 and 2 of the patent. The special master and the District Court held that the Waxtex box did not infringe these claims, but this court on appeal held to the contrary. See Automatic Paper Machinery Company, Inc., v. Julius Levine & Co., 3 Cir., 78 F.2d 504.

After Marcalus left the Davis Company he founded the appellant, Marcalus Manufacturing Company, Inc. Marcalus owns a majority of the stock of that company and directs its activities. Some time before September, 1933, Marcalus made a further alleged invention in respect to boxes for rolls of paper and procured a patent, No. 1,991,812, to cover it. Marcalus Manufacturing Company, Inc., has proceeded under this patent to manufacture and sell the accused box in the case at bar, which is known as the Kitchen Charm box.

The appellants concede, as indeed they must, that by reason of the facts heretofore stated they cannot be heard to deny the validity of Patent No. 1,630,495. The appellee for its part contends that the Kitchen Charm box is substantially similar to the Waxtex box, and that since this court held that the Waxtex box infringed the designated claims of the appellee's patent, we must now hold that the Kitchen Charm box also infringes, because of the formula "* * * things equal to the same thing being equal to each other".

Claim 1 of Patent No. 1,630,495 is for "A box comprising a single folded piece of material and a metal strip having a serrated edge attached with its serrated edge adjacent the free edge of one of the walls of the box, a cover flap for said box forming an integral part of the same piece of material as said box and adapted to fit inside or outside of the wall of the box carrying the metal strip, said metal strip being attached to said box longitudinally of and adjacent the free edge of said cover flap thereby forming a cutting edge for material within the box, and said metal strip being adapted to be concealed or exposed by the position of said flap outside or inside of said box." [1]

The patent specification also stated that a feature of importance is "that the flap of the box may be placed outside of the metal tearing strip so that the hands will not come into contact with the serrated edge of the metal strip or, the flaps may be placed within the box to guide the paper from the roll while it is being withdrawn."

Judge Woolley, delivering the opinion of this court in the first appeal (Levine & Co. v. Automatic Paper Mach. Co., 63 F.2d 547), found the invention of the patent to be "a very little one" (page 548). He stated in connection with the function of the cover flap, "It [the cover flap] likewise is adapted to be on the outside or inside of the front wall. When on the outside it may, conceivably, aid the use of the box as a container by protecting the waxed paper roll from dust, in which there is nothing remotely inventive. When on the inside it performs, by reason of its greater breadth, a wholly different function from that of holding the cover in place * * *. Though not required by the words of the patent to be so broad, it is nevertheless required by the patent to be broad enough to function as a 'guide.' The flap, when on the inside, is in parallel relation with the front wall, extends down almost its entire depth, is separated from it only by the sheet of paper and is separated from the bottom only by the same sheet. Thus it becomes a sort of cardboard dike which regulates the flow of paper. When the paper is on its way out between the flap and front wall (topped with a saw cutter) the flap makes a frictional engagement with the paper between itself and the front wall and between itself and the bottom, thus creating a drag against the manual pull, which tightens the paper and insures a clean, regular tearoff across the serrated cutter and avoids the irregular tearoff which naturally occurs when a loose sheet is drawn across it." Judge Woolley went on to state that the elements described by the patent constituted a combination and not an aggregation and

---

[1] Claim 2 of the patent is identical with claim 1 except that the phrase "prongs formed by and upstanding from said strip whereby they may pass through and be crimped upon one of the walls of said box, * * *", omitted from claim 1, is inserted between the word "box" in the fortieth line and the word "a" in the forty-third line of the patent in claim 2.

laid emphasis, as a most important element of that combination, upon the function of the dike in regulating the flow of paper.

In the second appeal (Automatic Paper Mach. Co. v. Levine & Co., 78 F.2d 504) Judge Buffington, delivering the opinion of this court, quoted a part of that portion of Judge Woolley's opinion which we have set out above, determining because of the alleged function of its cover flap serving as a cardboard dike, the Waxtex box infringed the appellee's patent. We now conclude that the court was in error in expressing such a conclusion for it is apparent to us by examination of the Waxtex box that its cover flap cannot serve as a cardboard dike within the outer wall of the box. It is impossible to put the cover flap of the Waxtex box inside the outer wall of the box. Moreover, in the Waxtex box the serrated edge is upon the cover flap and not upon the free edge of the outer wall of the box. This is true even if the Waxtex box be held upside down so that the emerging paper may be pulled down against the cutting edge.

What we have just said in respect to the Waxtex box is equally true in respect to the accused Kitchen Charm box. The cover flap of the Kitchen Charm box will not serve as a dike within the outer wall of the box for it is physically impossible to place the cover flap within the outer wall of the box. Even if the Kitchen Charm box be held upside down and be so viewed, as the appellee contends it must, the serrated edge is upon the cover flap and is not upon the free edge of any one of the walls of the box adjacent to the cover flap as is required by the patent in suit.

■ In view of the very slight invention this court found to be disclosed in Patent No. 1,630,495 we think we are justified in giving the patent but narrow scope and therefore may find infringement only in approximate copies of the box of the patent. Eibel Process Co. v. Paper Co., 261 U.S. 45, 63, 43 S.Ct. 322, 67 L.Ed. 523. The Kitchen Charm box is not an approximate copy of the Cut-Rite box for the cardboard dike found by this court to be a most important element in the combination of elements is absent from the accused box. Moreover, the arrangement of elements is different in the accused box from the box of the patent. It is true as the appellee contends that the accused box and the Waxtex box are substantially identical, but as we have said this court was in error in holding that the Waxtex box infringed the box of the patent. The decision is not the law of the case at bar nor is it res judicata upon the issue presented for our determination. We therefore will not follow it, but hold that the accused Kitchen Charm box does not infringe claims 1 and 2 of Patent No. 1,630,495.

■ One further subject remains for comment. The appellee contends that Judge Woolley in referring to the cardboard dike "* * * could not have referred to * * * [the] brake flap because neither the patent in suit, the plaintiff's Cut-Rite box or Menasha's first box had any such element." The appellee goes on to state in its brief, "Hence Judge Buffington, quoting Judge Woolley, could not have been referring to * * * [the] brake flap * * *." Both prior appeals, however, were decided in the appellee's favor upon the theory of the function of the cardboard dike. If that element which vitalized the patent was not present, the appellee may not be heard to say so. Having had the advantage of the validation of the patent, it must now assume the burden of an element upon which that validation was based.

In view of what we have stated, it is not necessary to consider the alleged prior use of the Handy Wax Paper box.

The decree of the court below is reversed and the cause is remanded, with directions to dismiss the bill of complaint for want of equity.