## FRANK ASSOCIATES, Inc., v. COLUMBIA NARROW FABRIC CO.

District Court, S. D. New York.

Feb. 28, 1940.

Mock & Blum, of New York City (Asher Blum, of New York City, of counsel), for plaintiff.

Thomas J. Byrne and Cooper, Kerr & Dunham, all of New York City (H. B. Barlow, of Providence, R. I., of counsel), for defendant.

KNOX, District Judge.

Suit is here brought for alleged infringement of Claims 12, 15, 16 and 19, inclusive, of United States Letters Patent 1,922,944, for an elastic woven fabric.

Before discussing the parties' contentions with respect to the construction to be placed upon the patent claims, the relationship between the litigants should be stated. Some years ago each of them was engaged in prosecuting an application for a patent upon an elastic woven fabric. Upon May 16, 1933, certain claims sought by the applicants were declared to be in interference. About two months thereafter, the parties agreed that the interference proceedings should be terminated, and that the patent, now before the Court, should be issued to defendant. It was further stipulated that the latter would manufacture merchandise pursuant to the teachings of the patent, and that, with certain exceptions, plaintiff should be the exclusive selling agent for defendant's product. Such profits as accrued were to be divided equally between the parties. In the event that the relationship, thus established, should be terminated, title to the patent was to vest in plaintiff.

Under this arrangement, and during the years 1933 and 1934, defendant made, and plaintiff sold, an elastic woven material having a natural silk warp which, concededly, was within the patent.

In the course of the business, plaintiff became indebted to defendant to the extent of about $20,000. Confronted with this situation, the parties made a further contract, dated December 13, 1934. Its purport was that, when plaintiff should pay certain sums of money to defendant, title to the patent and to certain others should vest in Frank Associates, Inc. Pending payment of installments of the purchase money, the patent was to be held in escrow. During this period, plaintiff, Frank Associates, Inc., was to have an exclusive license to manufacture merchandise according to the disclosures of the patent. The contract of December 13, 1934, made no mention of elastic fabrics in which rayon warps were used. Plaintiff, nevertheless, was aware that defendant had produced fabrics of this nature. In fact, plaintiff sold some of this material. Following the agreement of December 13, 1934, such manufacture continued, but the defendant ceased producing elastic fabrics in which natural silk yarn was employed.

Plaintiff paid the first two installments as were called for by the contract. These remittances served to release the patents from escrow, and they were delivered to plaintiff upon March 2, 1935. When the third installment of purchase money became due, it went unpaid. As a reason for nonpayment, plaintiff asserted that the rayon fabrics which had been, and were being produced by defendant, constituted an infringement of the patent claims in suit, and that, accordingly, it had a counterclaim or offset against such final payment.

The contract of December 13, 1934, provided that disputes in reference thereto should be settled by arbitration. Arbitrators being chosen, they decided unanimously that plaintiff was obligated to pay the last installment for which the agreement provided. They declined, nevertheless, to pass upon the claim that defendant's manufacture of elastic rayon fabrics constituted an infringement of certain claims of the patent. Thereafter, plaintiff sought a court review of the arbitration proceedings. Before they were terminated, the parties agreed that defendant should accept a lesser sum of money than previously had been agreed upon, and it was arranged that the patent infringement issue should be submitted to the court for determination.

In view of the foregoing, plaintiff takes the position that, irrespective of certain prior art practices, which conceivably would serve as a limitation upon some of the broad claims of the patent, defendant is estopped from taking advantage of any such limitation. Defendant, upon the other hand, cites the authority of Westinghouse Electric & Mfg. Co. v. Formica Company, 266 U.S. 342, 45 S.Ct. 117, 69 L.

Ed. 316, and argues that in a patent suit between an assignee and his assignor, the state of the art may be considered for the purpose of measuring the extent of the government's grant to the patentee.

Before passing upon this feature of the case, something should be said concerning the patent itself and of the construction which defendant itself once thought could be placed upon it.

The objects of the patent are these:

. a. To provide a generally flat relatively wide elastic fabric when taken from the loom, and one which may be made unusually thin and formed either relatively flat or shirred thereafter;

b. A method of forming a fabric of threads which are shrunk after being woven. By this means it is possible to obtain a more elastic and thinner material than can be had where the threads are shrunk prior to weaving.

c. The production of a fabric with elastic threads such that when the inelastic threads are shrunk the elastic threads will contract and be extendible to the size of the fabric prior to shrinking, and

d. One having rubber threads which may contract slightly when taken from the loom, but which will have its major contraction in the finishing process.

The invention further consists "in the method of forming an elastic fabric which, after being taken from the loom, is in an inelastic state and is rendered elastic by treatment in the finishing process."

The specifications declare that the "invention has to do primarily with silk or rayon threads, although other materials may be used and the gum or sizing is that usually present in the working of this material. * * * In finishing the gum or sizing is washed from the non-elastic threads so that the rubber or elastic thread contracts and takes up this shrinkage and the fabric is narrowed by a material extent. It is found that a piece of silk fabric which is woven on a loom substantially forty-three inches wide will contract to a width of substantially twenty-four inches after being finished and shrunk * * *."

Defendant's warp threads are wholly of rayon, and, when purchased, these threads are unsized. In the process of weaving, the fabric has a width of from 47.5 inches to 48 inches. Prior to working the rayon, defendant sizes the yarn with gelatine. This bath increases the weight of the material by about 2% and enables the threads to withstand the rigors of weaving. The sized warp threads are interwoven with filler threads which alternately are of spun silk or cotton and a rubber thread called "Lastex." The rubber threads have a normal length of 29 inches. Since the fabric to be woven has a loom width of about 48 inches, each elastic filler is stretched to the extent of about 18 inches. Upon removal of the fabric from the loom, its width narrows itself to between 34 and 38 inches. This is occasioned by the partial contraction of the elastic threads, and the shrinkage of the non-elastic threads. The rubber bands remain, nevertheless, under some tension. But, after finishing, drying and dyeing, the fabric undergoes further contraction and has a width of from 30 to 32 inches. This later contraction is due to the desizing and shrinking of the non-elastic threads.

One of the characteristics of raw silk yarn is that it is endowed with a natural gum which contributes about 20% of the weight of the thread. This natural sizing is of greater binding power than that of the gelatine sizing with which rayon yarn is mechanically impregnated. Hence, particularly, if closely woven, an elastic fabric made with a warp of raw silk, when taken from the loom, is relatively stiff and will, initially, contract but a few inches. When finished, however, the shrinkage will be about 16 additional inches. Defendant asks that the patent be limited to a fabric of this nature. The language of the patent, in and of itself, will not permit this to be done. In addition to stating that the invention has to do with silk or rayon threads, the specifications go on to declare that the patentee reserved to himself "the privilege of resorting to all the changes to which the fabric is susceptible, the invention being defined and limited only by the terms of the appended claim." And the claims in suit are so framed as to include defendant's fabric. The claims in suit read as follows:

"12. A method of forming an elastically extendible material, which consists in weaving rubber threads under tension with relatively non-elastic textile threads located sufficiently close together and having a sufficient gum or sizing therein to hold the elastic threads under substantial tension when woven and taken from the loom, and then degumming the fabric to permit a contraction of the rubber threads

and provide an elastically extendible fabric.

"15. A fabric formed of woven material, comprising relatively non-elastic threads and relatively elastic threads of rubber stretched under tension said non-elastic threads being sufficiently close together and containing sufficient gum or sizing therein to maintain the elastic threads under tension.

"16. A fabric formed of woven material, comprising relatively non-elastic warp threads and relatively elastic threads of rubber in the weft stretched under tension said non-elastic threads being sufficiently close together and containing sufficient gum or sizing therein to maintain the elastic threads under tension and contractible upon the removal of said gum or sizing.

"19. A fabric formed of woven material comprising relatively non-elastic threads and relatively elastic threads of rubber stretched under tension, said elastic threads being spaced in the fabric so as to have an even drawing effect and said non-elastic threads being sufficiently close together and containing sufficient gum or sizing therein to maintain the elastic threads under tension said elastic threads being contractible upon removal of said gum or sizing to produce a substantially flat fabric by reason of the even drawing effect of said elastic threads."

When ownership of the patent had vested in plaintiff, a concern bearing the name Carl Stohn, Inc., was engaged, and had been so engaged since 1931, in manufacturing a product substantially similar to defendant's elastic rayon material. When Clark, President of Columbia Narrow Fabric Company, learned of this, he thought that Carl Stohn, Inc., might possibly be infringing the patent in suit, and he talked over the matter with Frank. Apparently, the latter was to discuss the matter with his patent attorneys. At any rate, under date of May 24, 1934, defendant wrote plaintiff as follows: "Have you seen Mock & Blum or do you consider we should just let the matter of rayon fabrics drop and try and protect our patent only on the gum silk and rubber fabrics?"

Since there is no letter in evidence from Frank which replies to this inquiry, I assume that none exists. The parties, however, consulted verbally concerning the Stohn material, and upon June 11, 1934, Clark wrote defendant as follows: "I also expected Mr. Frank would read those patents through again carefully because I am of the opinion that we can stop Stohn with his acetate and rayon fabrics. From the wording of our patents his sizing solutions which have to be used in acetate and rayons, certainly read on to our claims. We, of course, can make the acetate and rayon fabrics, but it would seem that the pure silk is so much better and the price only slightly higher, if at all, that all the preference would be for the pure silk goods. Does Mr. Frank think we can crack down on Stohn for a 10¢ a yard royalty on his acetate goods retroactive to January 1, this year?"

Notwithstanding, that Frank by his own admission states he was marking defendant's rayon as patented, no suit was brought against the Stohn Company. Nor was action taken against Urquhart Manufacturing Company, which, also, was producing an elastic rayon fabric, quite similar to the Stohn material.

The reason assigned by defendant for its failure to pursue the Stohn and Urquhart concerns is that Gobeille, the patentee, conducted some experiments with rayon fabrics, finding that their behavior, when first removed from the loom, was so different from those made with natural silk, as to take the former from without the protection of the patent. From that time on, defendant made no further suggestion to the effect that Stohn was infringing. Upon this record, I can not but find that Frank acquiesced in the conclusion thus reached by defendant. From the proof here offered in respect to the prior art, it is not difficult to find that, so far as the Stohn and Urquhart goods are concerned, an infringement suit would have availed nothing to either plaintiff or defendant.

■■■ Were it not that, in this case, defendant assigned the patent to plaintiff, I should unhesitatingly dismiss the bill. But that such action should be taken here is a more difficult question. Undoubtedly, in my mind, the evidence having to do with prior art was properly admitted. Its admission was authorized, not only by Westinghouse Electric & Mfg. Company v. Formica Company, supra, but by Vogt Instant Freezers v. New York Eskimo Pie Corporation, 2 Cir., 69 F.2d 84, Baldwin Rubber Company v. Paine & Williams, 6 Cir., 99 F.2d 1, and Scovill Manufacturing Company v. Radio Corporation of America, D.C., 9 F.Supp. 239. But, though it be that the assignor of a patent may, by proof of

prior art, limit the scope of its claims, and thus, successfully, deny their infringement, he is estopped from claiming the invalidity of the patent. It is true, also, that as between an assignor and his assignee, "the courts will give a liberal, rather than a narrow, construction to the patent assigned." Libbey Glass Company v. Albert Pick Co., Inc., 7 Cir., 63 F.2d 469, 470; United States Frumentum Company v. Lauhoff, 6 Cir., 216 F. 610.

Following this rule of law, and, bearing in mind the defendant is estopped to deny the validity of the patent, I do not see how it can avoid a decree of infringement. A limitation of the claims which would exonerate defendant would be tantamount to a decree that the claims are invalid. It is urged upon me that a sizing of rayon threads to the extent of 2% of their weight is not enough to respond to the requirement of the claims that the threads have "sufficient sizing." It is said further that the rayon threads are not sufficiently close together as to bring them within the terms of the claims. To these arguments, I cannot give assent. Though the sizing imparted to the rayon threads is not great in amount, and notwithstanding the threads are not as closely woven as is possible, the sizing is sufficient to permit the threads to be woven successfully, and its gelatinous nature necessarily has some binding effect upon the rubber threads of the fabric when it is taken from the loom. The weave also has a retarding effect upon the contraction of the rubber. That this binding action is not so great as in material wherein silk warps are used, is of no consequence here. The claims are broad enough to include any reasonable restriction upon the contraction of the rubber threads.

During my consideration of the case, I had some thought to the effect that plaintiff, due to its acquiescence, for a considerable period of time, in defendant's manufacture of rayon fabrics, might itself be estopped from claiming that defendant is now infringing. This thought, I believe, was not well founded. In the first place, no such defense was pleaded. Secondly, the parties, in partnership as it were, having secured a patent of broad terms, and which, had they so determined might have been used to harass the trade, should, when dealing with each other, and when they chose to place no restriction upon their respective rights, be left where they are found. The most that plaintiff can be said to have done is that, from the time it acquired the patent until the assertion of the infringement claims, it, in effect, licensed defendant to manufacture fabrics containing rayon warps. Upon revocation of such license, plaintiff was entitled to insist upon its rights under the assignment.

Plaintiff may have a decree.