AUTOMATIC PAPER MACHINERY CO., Inc., v. MARCALUS MFG. CO., Inc., et al.

No. 8589.

Circuit Court of Appeals, Third Circuit.

Argued May 18, 1944.

Decided Feb. 8, 1945.

Writ of Certiorari Granted April 30, 1945.

See 65 S.Ct. 1088.

Samuel E. Darby, Jr., of New York City (Wall, Haight, Carey & Hartpence, of Jer-

sey City, N. J., Donald J. Overocker, of New York City, and Edward J. O'Mara, of Jersey City, N. J., on the brief), for appellants.

George E. Middleton, of New York City (Young, Shanley & Foehl, of Newark, N. J., on the brief), for appellee.

Before BIGGS, GOODRICH, and Mc-LAUGHLIN, Circuit Judges.

BIGGS, Circuit Judge.

The plaintiff Automatic Paper Machinery Company, Inc., sued Nicholas Marcalus and Marcalus Manufacturing Company, Inc., alleging infringement of United States Patent No. 1,843,429, and sought an injunction and an accounting. On a motion for a summary judgment filed by the plaintiff pursuant to Rule 56 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the court below granted an injunction and ordered an accounting.[1] The defendants have appealed.

The facts may be stated as follows. In 1924 Marcalus and Roswell H. Rausch organized Automatic. Rausch procured the capital for the enterprise and served as president of the corporation. Marcalus contributed his inventive and mechanical skill and became vice-president, treasurer and manager of production. Rausch and Marcalus owned the stock of the company. Automatic put a serrated metallic cutter edge on an outer lip of a box blank and sold it. The product had substantial utility.[2] In 1930, when sheet metal was still plentiful, Marcalus, in what the plaintiff describes as "a moment of prescience", made the invention disclosed by the patent in suit. He filed an application in the Patent Office on December 4, 1930 and on the same day assigned it to Automatic. The application was allowed on July 8, 1931 precisely as Marcalus had filed it. On February 2, 1932 the patent issued to Automatic. The patent contains eleven claims, nine of which claim a machine or press for mounting "a cutter" upon a box blank. The two remaining claims, 10 and 11, appropriate a method for mounting "a nonmetallic cutter" on a box blank.

Marcalus states in his specification, "* * * I have provided a method and a machine by means of which a sheet of indurated paper and a box blank are fed to a press, in overlapping relationship, and a cutting element severed from the forward end of the sheet and secured along the edge of the box blank in what is substantially one operation." Claim 4, typical of the machine claims, is as follows: "In a press for mounting a cutter upon a box blank, the combination of a reciprocable ram, means for feeding a sheet of cutter material into overlapping relation to a box blank beneath the ram, means for severing a cutter from the sheet and securing it to the blank on each downward movement of the ram, and means operated by each upward movement of the ram for actuating the sheet feeding means." Claim 11, one of the two method claims, is as follows: "The method of mounting a nonmetallic cutter upon a box blank which comprises placing a sheet of cutter material and a box blank with their edges overlapping, applying glue, pressing the overlapping parts to join them, and while still under pressure severing the cutter material to leave a cutter with a serrated cutting edge glued to the blank with its cutting edge extending slightly beyond the blank."

Marcalus was employed by Automatic until December 1931 when, friction developing within the company, he withdrew and sold his stock for a substantial sum. Shortly thereafter, he organized Marcalus Company which engaged in manufacturing and selling a box with a metallic cutting edge for wax paper very similar to that manufactured and sold by his former employer, Automatic.[3] Both Automatic and Marcalus Company continued to mount metal cutters on their respective box blanks until the war brought about a metal shortage. Automatic then turned to the patent sub judice and employed a machine similar to that described in it for affixing nonmetallic cutters to box blanks. Marcalus Company also fixed non-metallic cutters to boxes employing the accused machine or press for that purpose. The defendants assert their machine reads on and actually was designed from the disclosures in another patent. This is Inman No. 1,036,851, which expired on August 27, 1929, more than three months prior to the filing of the application for the patent under considera-

---

[1] See D.C., 54 F.Supp. 105.

[2] It became the subject of a suit brought by the present plaintiff against the present defendants. See the opinion of this court in 3 Cir., 110 F.2d 304 and compare Levine & Co. v. Automatic Paper Mach. Co., 3 Cir., 63 F.2d 547.

[3] No restriction by contract was imposed on Marcalus to prevent him from engaging in a competing business.

tion. The accused machine is in fact a Chinese copy of Inman's. The defendants contend, therefore, that they have the right to make use of their machine without liability for infringement of the patent sub judice. The plaintiff asserts that the defendants' machine reads precisely on Marcalus No. 1,843,429, and since the defendants are estopped to deny the validity of the patent, they, therefore, must be found to have infringed it.

█ The court below found the disclosures of the Inman patent to be a complete anticipation of the Marcalus patent sub judice. Judge Smith stated [54 F. Supp. 107]: "The subjects of the respective patents [Inman and Marcalus] are substantially identical and are adapted to, and intended for, the same use. The machine of the Inman patent differs from the machine of the Marcalus patent only in the arrangement of its structural elements. It is significant that the accused machine reads element for element on the claims of either patent, and without the substitution of equivalent expedients. It is obvious that under these facts the principal question presented for decision is one of law—May the defendants defeat the assignment and the estoppel inherent therein by their resort to the prior art? It is our opinion that they may not." Resting his conclusion upon the decision of the Supreme Court in Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 266 U. S. 342, 350, 45 S.Ct. 117, 69 L.Ed. 316, and other authorities, the court below then said, "The assignor [Marcalus], * * * may not invoke the prior art for the ostensible purpose of limiting the claims, but for the real purpose of challenging their validity for lack of novelty. * * * The assignor will not be permitted to defeat the estoppel by indirection." Judge Smith went on to say that the Inman patent, "* * * *not only negatives infringement but it invalidates the Marcalus patent and defeats the assignment*.[4] If we were to permit the defense of non-infringement to rest on the Inman patent, the defendants would achieve, by indirection, the destruction of the Marcalus patent and the defeat of its assignment, and this the de-

fendants may not do."[5] For both quotations see 54 F.Supp. at pages 107, 108.

The main issue of the case presents the question of estoppel by deed in patent property in classic simplicity and requires the application, if possible under the circumstances of the case at bar, of the principle enunciated by Mr. Chief Justice Taft in Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., supra, 266 U.S. 342 at pages 350-351, 45 S.Ct. 117, 121, 69 L.Ed. 316. In the Formica case O'Conor had been issued a patent for a process for making composite electric insulation materials. He had been an employee of the plaintiff, Westinghouse, at the time he filed the application for the patent and assigned his rights in it to his employer. Claims 11 and 12 of the patent, as issued, were added by Westinghouse as assignee after O'Conor had left its employ. These claims were not allowed until four years after O'-Conor had participated in making use of the accused process, and for three years thereafter, Westinghouse had made no objection to O'Conor continuing the manufacture. O'Conor's specification disclosed a two-step process: (1) Pressure and heat; (2) cooling and baking. Claims 11 and 12 of the patent, the claims in litigation, appropriated the one-step process well known to the prior art. All of the other claims of the patent appropriated the two-step process. Claim 6 of the application as originally filed, was broader than claims 11 and 12 of the patent as issued. This claim of the application was rejected by the Patent Office. Mr. Chief Justice Taft said in respect to this claim: "It was so absurdly broad and all inclusive as almost to indicate that it was made to be rejected. O'Conor's signature to such a claim under the circumstances of course does not estop him when in fact it was not allowed, and certainly should not be used to bolster up a broad construction of the eleventh and twelfth claims when * * * the state of the art must limit them." Mr. Chief Justice Taft made it plain that all of the disclosures of O'Conor's specification, save the two-step process, were known to the prior art. But he stated: "In view of the [prior] art * * *

---

4 Emphasis added.

5 It is clear that the doctrine of estoppel by deed extends to Marcalus Company as fully as to Marcalus. He, his wife and son own all of the stock of the company. They are its officers and Marcalus admits that he controls the corporation. See Dixie-Vortex Co. v. Paper Container Mfg. Co., 7 Cir., 130 F.2d 569; Leader Plow Co. v. Bridgewater Plow Co., 4 Cir., 237 F. 376; Alvin Mfg. Co. v. Scharling, C.C.N.J., 100 F. 87.

it is very clear that the eleventh and twelfth claims must be read to include as an essential element of the combination therein claimed, the two-step process. Without this, there was nothing new in them in the field to which they applied." The Supreme Court held that since claims 11 and 12, so limited, were for a two-step process, O'Conor did not infringe the claims since he used a one-step process.

In the Formica decision the Supreme Court ruled that the state of the art could not be employed to destroy an assigned patent but might be used to narrow its claims, conceding their validity; in other words, the prior art might be used to "limit" claims as was done with those of O'Conor's patent by reading the two-step process out of the specification and into the claims. "The distinction," said Mr. Chief Justice Taft, "may be a nice one but seems to be workable." He quoted from the opinion of Mr. Justice Lurton, written when he was a Circuit Judge, in Noonan v. Chester Park Athletic Club Co., 6 Cir., 99 F. 90, 91.[6] As we apprehend the substance of the court's ruling in the Noonan case, however, structural changes unimportant in effect, which seem to have been simple mechanical equivalents, were held not to be such, and an adjudication of infringement was avoided.

Decisions of the inferior federal courts since the Formica case present varying interpretations of the Supreme Court's ruling. In Vogt Instant Freezers v. New York Eskimo Pie Corporation, 2 Cir., 69 F.2d 84, 87, the court, limiting the claims of the patents to the "cold rolls way of hardening" ice cream, described in the specifications but not claimed and which described methods which the defendant did not use, refused to make an adjudication of infringement. In Baldwin Rubber Co. v. Paine & Williams Co., 6 Cir., 99 F.2d 1, the doctrine of equivalents was applied precisely as if the assignor and the as-

signee had been strangers and the assignor consequently was held to infringe. In Frank Associates, Inc., v. Columbia Narrow Fabric Co., D.C.S.D.N.Y., 33 F.Supp. 279, 282, 283, though the court might have avoided an adjudication of infringement by interpolating into the claims a reference to the sizing of the rayon threads, it refused to do this and stated that, "A limitation of the claims which would exonerate defendant would be tantamount to a decree that the claims are invalid." The defendant was adjudged guilty of infringement. In Casco Products Corporation v. Sinko Tool & Mfg. Co., 7 Cir., 116 F.2d 119, certiorari denied 312 U.S. 693, 61 S.Ct. 713, 85 L.Ed. 1129, a licensee was held estopped to deny the validity of the patents under which it was licensed but the court limited the scope of the estoppel. The court held that the defendant was "not estopped to prove that its devices are built wholly according to. the teaching of the prior art and that everything necessary to their conception and construction was taught by such art, for such proof clearly negatives infringement. In other words if everything in defendant's construction was taught by the prior art and nothing included therein other than the application of such art, plus ordinary mechanical skill, then the mere fact that the devices constructed reads upon the claims of patents, the validity of which it is estopped to deny, does not spell infringement." Compare the decision of the same court in Dixie-Vortex Co. v. Paper Container Mfg. Co., 7 Cir., 130 F.2d 569, 577. Cf. Kessel v. Vidrio Products Corporation, 7 Cir., 113 F.2d 381, certiorari denied 311 U.S. 703, 61 S.Ct. 143, 85 L.Ed. 456, and Stubnitz-Greene Spring Corporation v. Fort Pitt Bedding Co., 6 Cir., 110 F.2d 192, 196. Cf. also Timkin-Detroit Axle Co. v. Alma Motor Co., D.C.Del., 47 F.Supp. 582, 588, and idem, 3 Cir., 144 F.2d 714. Compare also Swan Carburetor Co. v. General Motors Corporation, D.C.N.D.Ohio E.D., 42 F.2d

[6] The quotation was as follows: "'It seems to be well settled that the assignor of a patent is estopped from saying his patent is void for want of novelty or utility, or because anticipated by prior inventions. But this estoppel, for manifest reasons, does not prevent him from denying infringement. To determine such an issue, it is admissible to show the state of the art involved, that the court may see what the thing was which was assigned, and thus determine the primary or secondary character of the patent assigned, and the extent to which the doctrine of equivalents may be invoked against an infringer. The court will not assume against an assignor, and in favor of his assignee, anything more than that the invention presented a sufficient degree of utility and novelty to justify the issuance of the patent assigned, and will apply to the patent the same rule of construction, with this limitation, which would be applicable between the patentee and a stranger.'"

452, 454. A very different result than that arrived at in the Casco case was reached in Dwight & Lloyd Sintering Co. v. American Ore Reclamation Co., D.C.S.D.N.Y., 44 F. Supp. 401, 402, a licensing case. See also Buckingham Products Co v. McAleer Mfg. Co., 6 Cir., 108 F.2d 192, 193, wherein it was held that the assignor could not be heard to say that the invention was narrower than indicated by the claims despite the fact that the disclosures of the patent were anticipated fully by the prior art. It will be observed that the Casco decision is at one extreme and the Buckingham decision, at the other.[7]

The Formica decision applied the principle of anticipation to the claims of the patent, declaring that there was no infringement while preserving the surface of the grant. As we apprehend the ruling of the Supreme Court the prior art must be employed to measure the extent of the anticipation and the extent of the anticipation in turn "limits" the claims. If the subject matter appropriated by the claims has been anticipated, the claims are held not to be infringed. For example: In the Formica case the second step was read out of the specification and into the claims;[8] in the Noonan case, small differences in structure were held not to be equivalents because they were embraced in the prior art; in the Casco case, since everything of substance disclosed in the patents and appropriated by the claims was taught by the prior art, it was held that that negatived infringement. In the Formica and Noonan cases the grants were held not to be defeated though the grants as limited were of no practical value to the assignees. The assignments authorized them to proceed with manufacture under patents which were invalid under the prior art and the assignors were held not to be infringers. The same result as to a licensee was reached in the Casco case. We believe that the decision in the Casco case was correct. We conclude that it was not the intention of the Supreme Court by its Formica decision to cause federal tribunals to limit the claims of a patent on prior art when the art affords some anticipation of the subject matter of the claims and to avoid the effect of limitation when the prior art affords complete anticipation.

In the instant case, there are some very minor differences between Marcalus's claims and the accused press which, as we have stated, is a Chinese copy of Inman's device.[9] These distinctions are trivial. The machine of Marcalus's patent and the

---

[7] We can see no cogent reason why an assignor or a licensee should possess a different status in relation to an interest in patent property whether assigned or licensed. We are aware, however, that though under the law of real property, from whence the doctrine of estoppel by deed in respect to patent property evolved, an estoppel would not run against the grantee. The grantee might assert title to his land from any source. See Bybee v. Oregon & C. R. Co., 139 U.S. 663, 11 S.Ct. 641, 35 L. Ed. 305, and Guaranty Savings Bank v. Bladow, 176 U.S. 448, 20 S.Ct. 425, 44 L.Ed. 540. The point does not seem significant, however, either under the circumstances usually relating to the assignment or license of patent property or those of the case at bar.

[8] Suppose after the decision in the Formica case, Westinghouse had sued someone other than O'Conor, asserting the infringement of claims 11 and 12 of the patent. Presume further that the alleged infringers used the precise two-step process disclosed in O'Conor's specification. Would the validity of claims 11 and 12 have been upheld on the ground that a two-step process had been validly appropriated in the O'Conor patent? We find no satisfactory answer to this question. If the answer should be in the negative it is difficult to see how the grant would not be defeated. As to any other user of the process than O'Conor the claims, since they appropriated only the one-step process old in the art, would be invalid for want of invention. O'Conor had been held not to be an infringer. Under these circumstances, the monopoly of the patent is without value in the market place and the patent itself becomes a mere diploma. If the answer to the question should be in the affirmative, the result would seem to run counter to R. S. § 4888, 35 U. S.C.A. § 33.

[9] The appellant's brief recounts these differences as follows: " * * * the pressing and cutting dies of Marcalus as well as their cooperating anvils are supported by springs. This enables the cutting edge to be applied and glued to the box before the cutting edge is severed from its roll—a double action or two-step operation. Nothing of this sort is utilized in the Inman machine of the defendant, which is a single action machine—the gluing and severance of the cutting edge being effected in one operation. Again, the machine of the Mar-

accused machine are alike in substance. With the exception of the employment of the springs in the accused machine referred to in the first sentence of the quotation, in note 9 infra, the accused machine, that of Inman and that of the Marcalus patent are as alike as peas in a pod. The accused machine lies completely in the prior art.

■ If we are correct in our conclusion that under the rule of the Formica decision the prior art measures the extent of the anticipation and the anticipation *limits* the claims, anticipation being complete in the instant case, the claims of the patent must be limited to nought. We conclude that the District Court erred in holding the contrary.

■ There are cogent reasons, however, why the doctrine of estoppel by deed should be held to be inapplicable in the instant circumstances. The Inman patent expired more than three months prior to the date of the filing of Marcalus's application. It is a fundamental principle of our patent system that when a patent has expired the device or the process which it discloses lies in the public domain. Any member of the public had the right to use the press three months before Marcalus filed his application. The Inman patent and its date of expiration were matters of official record in the United States Patent Office. Drawing an analogy from the law of real estate, appropriate under the circumstances, the principle of estoppel by deed may not be employed to validate a conveyance of public lands executed by one who was without authority to make the grant. If an individual purported to convey a public park to a stranger, the grantee could not exclude the grantor from the premises. True, legal title to public lands lies in a sovereign and the public has no legal title to patent property freed of monopoly, but this is a matter of form rather than substance for the right to use such property is in the public. The extent of the public interest in inventions may not be questioned in view of the decisions of the Supreme Court. See Muncie Gear Co. v. Outboard Co., 315 U.S. 759, 768, 62 S.Ct. 865, 86 L. Ed. 1171; Mercoid Corporation v. Mid-Continent Investment Co., 320 U.S. 661,

64 S.Ct. 268; and Densmore v. Scofield, 102 U.S. 375, 378, 26 L.Ed. 214. See also the decision of this court in Cridlebaugh v. Rudolph, 3 Cir., 131 F.2d 795, 800.

It must be borne in mind that the amount of any royalty imposed upon Marcalus Company by the plaintiff will be passed on to the public, an incident which does not follow a conveyance of private lands. In the case at bar, to permit the imposition of a royalty, the ultimate result of a judgment of infringement in the case at bar, is the equivalent of allowing the grantee of a deed executed without authority, purporting to convey title to public lands, to charge a toll to the public. While it may be argued that any part of a prior art, whether embodied in an official record or not, lies in the public domain and therefore would be subject to the rule which we have enunciated, it is not necessary to go so far in deciding the case at bar. The whole body of a prior art ordinarily consists of many items which are not matters of official record. In the instant case, however, the Inman machine lies in the public domain by reason of the expiration of a United States patent under the law of the United States. This is a matter of official record.

■■ The doctrine of estoppel by deed arose by way of the solemn assurance presumed to have been given by the grantor to the grantee that the lands and title which were conveyed were as the grantor represented or warranted them to be, an assurance on which the grantee was assumed to have relied. See Gilmer v. Poindexter, 10 How. 257, 13 L.Ed. 411. Estoppel is an equitable doctrine and its essence lies in mutuality. Sutton v. Dameron, 100 Mo. 141, 13 S.W. 497. He who endeavors to rely on estoppel must himself have acted in good faith and without knowledge that the title to the land was not as represented by the grantor. Vaughn v. Hixon, 50 Kan. 773, 32 P. 358. This principle is stated in Bishop's Equity. See Section 280. If the grantee is not deceived by the representation he should not be entitled to rely upon it by way of estoppel. It would follow, we think, that if the assignee was chargeable with the knowledge

---

calus patent applies the glue in spots on the upper surface of the non-metallic material, whereas in the defendant's machine of the Inman patent the glue is applied continuously to the bottom surface of the non-metallic material. Additionally, the fibrous material is supplied to the cutting and pressing anvil beneath the box blank, whereas in defendant's machine of the Inman patent the non-metallic material is supplied above the box blank."

as in the case at bar, that the patent property which the assignor sought to convey to him lay in the public domain, he should not be entitled to assert the doctrine of estoppel by deed.

For these reasons also, the defendant should be held not to infringe the patent under consideration. Accordingly, the judgment is reversed.